GLOBE, The (FLORA v.). See Case No. 5,484.

GLOBE, The (SCHARLOCK v.). See Case No. 12,439.

GLOBE, The (The SPLENDID v.). See Case No. 5,485.

GLOBE BANK (BARNEY v.). See Case No. 1,031.

---

## Case No. 5,486.

GLOBE INS. CO. v. CLEVELAND INS. CO.

[14 N. B. R. 311;[1] 8 Chi. Leg. News, 258; 4 Am. Law Rec. 652; 13 Alb. Law J. 305.]

Circuit Court, N. D. Ohio. April 7, 1876.[2]

ASSIGNMENT FOR THE BENEFIT OF CREDITORS— WHEN VOID—BANKRUPT ACT.

1. A general assignment for the equal benefit of all creditors is void, as against an assignee in bankruptcy, being at war with the policy of the bankrupt law [of 1867 (14 Stat. 517.)].

[Approved in Re Beisenthal, Case No. 1,236. Cited in Macdonald v. Moore, Id. 8,763; Re Croft, Id. 3,404; Re Kimball, Id. 7,770; Re Seeley, Id. 12,628; Platt v. Preston, Id. 11,219.]

2. The same rule was applicable to the law of 1841 [5 Stat. 440].

3. Such has always been the rule under each successive English act, and is now a matter of statutory provision in England.

4. The rule, that where a statute is taken from another country or state which has received a judicial interpretation, the presumption will be that such interpretation is also adopted, *held* to be applicable, in this instance, with more than ordinary force.

5. In the law of 1867, the judicial interpretation which in England held general assignments to be void, as against a claimant, under the bankrupt law, has been expressly adopted by adding the words, "or to defeat the operation of the act." It was this effect in England which the courts declared avoided such transfers.

[In error to the district court of the United States for the Northern district of Ohio.]

In bankruptcy.

Mr. Follett and Mr. Ingersoll, for Globe Ins. Co.

Willey, Turrell & Sherman, for Cleveland Ins. Co.

---

[1] [Reprinted from 14 N. B. R. 311, by permission.]

[2] [For disposition of the case by the supreme court, see note at end of case.]

EMMONS, Circuit Judge. Upon this writ of error, if there are any facts which prevent a decision upon the abstract question of law which we discuss from being a complete disposition of the case, they have not been called to our attention. The sole question for our determination is, whether the general assignment, for the benefit of all creditors equally, made by the Cleveland Insurance Company, is an act of bankruptcy, and void under the statute. For a number of years the anomalous condition has existed of a special local rule, in the Sixth circuit, in reference to general assignments under the bankrupt law, which pertains in no other part of the Union. In deference to an opinion expressed by Justice Swayne, soon after the enactment of the law, in a case where the point did not arise, the district and circuit judges, in conflict with their own opinions, have refused to interfere with such conveyances. A letter from our Brother Swayne desired us to decide the question as we deemed right, that it might be ultimately settled by the supreme court. A recent judgment by that tribunal—Mayer v. Hellman [91 U. S. 496]—refers to, but expressly waives, an expression of opinion upon the point. That tribunal is not accustomed thus to treat questions it deems too plain for discussion. In these circumstances, having been unable to change the views which we have always entertained upon this subject, as well under the law of 1841 as the present statute, we have deemed it proper to accompany the judgment which we render with a somewhat full statement of the reasons upon which we rest it. The very efficient aid which the learned counsel for the Globe Insurance Company have rendered us enables us to do so with more fullness than otherwise would have been possible.

The following are a portion only of the cases which have been decided by the circuit and district courts, declaring a general assignment void under the act of 1867. We do not take pains to exhaust the references upon this subject. Perry v. Langley [Case No. 11,006] was an assignment which had been recorded under the laws of Ohio, five days before the bankrupt law came into operation. It is treated by the court like an ordinary general assignment. Judge Leavitt, erroneously, we think, holding that the statute had a retroactive effect, decided that a general assignment, for the equal benefit of creditors, was void, because it transferred the property to a different course of administration, and gave the appointment of the trustee to the debtor instead of to the creditors. He refers to Deacon on Bankruptcy (pages 72 and 73) and Griffith on Bankruptcy (pages 107, 119, 120) to show that such had always been the interpretation of the English statutes; and to the American judgments which had given a like construction to the law of 1841. We hereafter notice the judgment of Justice Swayne reversing this decision. In Re Goldschmidt [Case No. 5,520] Judge Blatchford

holds a general assignment an act of bankruptcy, and as grounds for refusing a discharge. In Re Randall [Id. 11,551], Judge Deady makes precisely the same ruling. It does not detract from the effect of these judgments upon the principal point that oth er tribunals have not deduced the same consequences from such an act of bankruptcy. Judge Cadwalader, in Re Pierce [Id. 11,141], rules the principal point in the same way, although he thought it was not such a fraud as prevented a discharge. Hardy v. Bininger [Id. 6,057] was a petition in review before Judge Woodruff. An insolvent firm had procured in chancery a transfer of all their property to a receiver. This was held an act of bankruptcy, because it defeated the operation of the act by transferring the property to a different course of administration. The learned judge says it is immaterial that the citizen may select a better and more economical mode than that pointed out by the bankrupt law; and, after enumerating many of the leading features of the latter, in reference to the settlement of claims, the investigation of fraud, and the punishment of wrongs, the declaration of dividends, and other features, says: "None of these are secured by a transfer made by the bankrupt himself, whether fraudulent or not; it is enough that it defeats the operation of the act, to avoid it." In Re Smith [Id. 12,974], Judge Hall had previously ruled that a general assignment was an act of bankruptcy, resting his judgment upon reasons nearly identical with those of Judge Woodruff. These and other similar rulings in the Second circuit show how differently the judges there considered the decision of Judge Nelson, in Sedgwick v. Place [Id. 12,622], from the interpretation which has been given it when cited to sustain a contrary ruling. They do not refer to it as bearing upon the question. In re Union Pac. R. Co. [Id. 14,376] contains an intelligent statement of the English doctrine. which has uniformly held a general assignment to be an act of bankruptcy, and adds an opinion that our law should receive the same interpretation. Judge Lowell thinks the creditors, and not the bankrupt, should have the power of selecting the trustee. In Re Mendelsohn [Id. 9,420], Judge Hillyer, in holding an assignment void because it created a preference, says that the weight of authority is in favor of the invalidity of even a fair general assignment for the benefit of creditors. See Spicer v. Ward [Id. 13,241]. In Re Burt [Id. 2,210], Justice Miller, sitting with Circuit Judge Dillon, deciding a case upon review, held that a general assignment was an act of bankruptcy. The point was fully raised. Barnes v. Rettew [Id. 1,019], in an elaborate judgment, which goes over the English and American history of this question, and ably considering it upon principle and authority, holds that a general assignment for the equal benefit of creditors is per se an act of bankruptcy. The judg-

ment is drawn up by Judge Cadwalader, and concurred in by Circuit Judge McKennan. We recur to it again more fully in connection with our statement of the English law.

Opposed to these concurring judgments directly upon the point is that of Justice Swayne in Langley v. Perry [Case No. 8,067], and his dictum in Farrin v. Crawford [Id. 4,686]. We are not aware of any other judgment under the law of 1867, so holding. There are a few dicta. We repeat only criticisms frequently made when it is said the point did not arise in Langley v. Perry. The assignment was made before the bankrupt law was in operation, and the latter could have no effect upon it. That it could not will hardly be doubted, but it has been frequently ruled. Day v. Bardwell, 97 Mass. 246; Chamberlain v. Perkins, 51 N. H. 336; 37 Cal. 208. This is familiar law, and would not have been overlooked by the learned justice, but for the accident that the district court had ruled the point, and the rectitude of his judgment in that regard was not discussed or questioned in the circuit court. The report of the judgment is very meager and is manifestly imperfect. We infer from what little we have of it that the argument turned mainly upon the question of fraud under the statute of Elizabeth, and at common law. In Farrin v. Crawford [supra], his honor expressly says the point does not arise, and he remarks only, that he supposes the judgment in Langley v. Perry to be right. The opinion of Judge Nelson is elsewhere shown not to be opposed to our present ruling. In Re Marter [Case No. 9,143], Judge Brown, of the Eastern district of Michigan, saying that he withheld an expression of his own opinion, followed that of Justice Swayne, in Langley v. Perry [supra], as have all the judges in this circuit since it was rendered up to the present time. He refers to the judgment of Judge Hall in Re Wells [Id. 17,387], as in accord with that of Judge Swayne. Judge Hall decided only that, as the intent to delay creditors was denied upon the record, and no issue was taken upon that intent, he was precluded by the averments from going into the question at all. He expressly disclaims a decision upon the question before us, whether a general assignment is or is not an act of bankruptcy. That he did not intend to decide, as our Brother Brown supposes, is entirely clear, from his able judgment deciding this point as we now rule it, in Re Smith [Id. 12,974]. A reference is also made to a like opinion by Judge Treat, of Missouri. In the report no opinion is given. It is simply said such a judgment had been rendered. That this is not the law administered in that district appears from the concurring judgments of Justice Miller, of the supreme court, and Judge Dillon, already referred to.

Upon mere authority, therefore, being released from the obligation of following the precedent in our own circuit, this review shows we have no choice of judgment. Jus-

tice Miller, in a case where the point arose, and the entire body of circuit and district judges in the circuit and district courts, have followed the uniform decisions in England and in this country from the earliest periods of the bankrupt law, and have decided with entire unanimity that a general assignment for the equal benefit of creditors, and all similar transfers procured by operation of law, are acts of bankruptcy and a fraud upon the act.

Under the law of 1841 several decisions of this precise question were made. During the administration of that law, when at the bar, we had occasion to examine it. Few doctrines were more generally acquiesced in at that time than that general assignments for the benefit of creditors had become unlawful. Every lawyer of large practice will be enabled to say that the practice was abandoned throughout the country. The local judgments were then less frequently reported than now, or they would have been as numerous in the books as they are under the law of 1867. We are quite confident there are others, but our want of time enables us now to refer only to the two cases following, which ruled the precise point upon a general assignment. As we soon notice, however, the identical principle is involved in all those numerous judgments under both acts which hold similar assignments under local statutes to be acts of bankruptcy. When they are considered, it will abundantly appear that the act of 1841 was interpreted as we construe the present law. In McLean v. Johnson [Case No. 8,883] the precise point was presented under the law of 1841, and the assignment was declared to be a fraud upon the act, and the assigned property was directed to be delivered up to the assignee in bankruptcy. That act contained no clause providing that transfers should be void which defeated the operation of the act, like our present law; but it was held to be so by implication, in conformity to the English precedents. McLean v. Meline [Id. 8,890] involves the same question and was decided in the same way.

The cases already referred to in terms involving a general assignment are by no means all which pointedly and directly decide this very matter. All the numerous cases which have held that state insolvent laws are suspended by the enactment of a national bankrupt law, necessarily involve this identical principle. There is not a scintilla of difference distinguishing one class of judgments from the other. It is but an immaterial accident that in the one what is prohibited by the bankrupt law is effectuated by a voluntary general assignment, and in the other that a similar transfer is made in conformity with the state law. Such statutory conveyances are not held void as against the policy of the bankrupt act, because of the state enactment, but on account of what those statutes authorize to be done. Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122; Ogden v. Saunders, 12 Wheat. [25 U. S.] 213; and Cook v. Moffat, 5 How. [46 U. S.] 295, 308, and the long list of federal and state concurring judgments,—abundantly show that state legislation is authorized until congress acts; and that such legislation is suspended so far only as it comes in conflict with federal legislation. In determining whether it does so come in conflict, the very question asked in this case has to be answered. Is the matter which is authorized in conflict with the general policy and the mode of its execution provided by the national law? If the state statute authorized a transfer of all a debtor's property for equal distribution among his creditors, in the language of many of the cases, "acting upon the same persons and property," a transfer under it is void; not because the distribution is different or because the proceedings are less plenary, but for the sole reason that a different tribunal is selected than that provided by congress. The reasons given by the most learned judges who have discussed this subject are so strikingly like those found in the British decisions declaring general assignments void as against the English bankrupt law that were they interchanged the opinions would be equally sustained. The remark is equally true of the American rulings, where a general assignment has been called in question. When, therefore, it is decided that a state insolvent law is suspended, because it takes the property of a bankrupt from the control of the national courts, a decision has been made which not only completely covers and declares void a general assignment, but goes very far beyond the doctrines necessary for its invalidity. They demand only that a different tribunal shall be sought, and for a much greater reason is an assignment void which not only seeks such other tribunal, but chooses the trustee by the uncontrolled election of the debtor, and practically avoids all the guards which the provisions of the statute are intended to throw around the rights of creditors.

In referring to the judgments deciding what proceedings are in conflict with the bankrupt law, when authorized by state enactments, it is manifest that we are not at all concerned with the differences in opinion between those judges who think the state provision is wholly suspended, and those who think proceedings under them are good until called in question by an assignee in bankruptcy. All are unanimous in declaring that transfers under them are void, when questioned in that mode. It is this consistent feature in them all to which we point as determining the question now before us. It would lead to most unwarrantable prolixity were we to analyze and reproduce the provisions of the various state statutes, for the purpose of showing, by their particulars, that all of them, with slightly varying forms, simply take the estate of the debtor, transfer it to trustees, convert it into money, and distribute the proceeds among the creditors. They all do substantially, but in a better and

more protective form, what a general assignment does, and, we repeat, it is for this reason only they are adjudged to be in conflict with the bankrupt law. A perusal of the judgments we cite under this head will show that the reasons upon which they rest are literally and substantially precisely those which, in England and in this country, sustain like decisions in reference to the invalidity of general assignments. It should be noticed particularly that no distinction whatever is made between those local systems which do and those which do not discharge the debt itself. It is the custody and appropriation of the assets which constitute the wrong. Maltbie v. Hotchkiss, 38 Conn. 80, was a contest between an assignee, under a state law, and a levying creditor. The court reaffirms its judgment in Hawkins's Appeal, 34 Conn. 548, that the state proceeding is good until some right is asserted under an adjudication in bankruptcy. But, in reconciling its judgment with just relations to the federal judiciary, the court, by Carpenter, J., in a thoroughly argued opinion, shows that a general assignment for the equal benefit of all the creditors, either with or without a local statute, is void under the bankrupt law, and that if an assignee claims the property from the state tribunal, it would necessarily be transferred to him. This learned court identifies the two cases of a statutory and a general assignment, holding both to be equally void. This case shows how grossly the case of Hawkins's Appeal is misunderstood by those courts which have cited it as sustaining the validity of a general assignment against the bankrupt law. As construed by the court which pronounced it, it said no more than that the assignment would be upheld until questioned by proceedings in the national court. In re Reynolds [Case No. 11,723] is amongst the most intelligent discussions of the subject that we find in the more recent decisions. It reviews the leading cases, and holds that a state insolvent law which appropriates all a debtor's property, and distributes the proceeds ratably amongst his creditors, although it does not discharge the debtor, is wholly suspended by the enactment of a bankrupt law. It was said, the state law took the entire assets from the court of bankruptcy, and deprived the creditor of the protection which the federal law was intended to secure. The following cases upon this subject arose under the bankrupt law of 1841: Griswold v. Pratt, 50 Mass. [9 Metc.] 16, in deciding that the state law is, ipso facto, suspended without any proceedings in bankruptcy by the enactment of the bankrupt law of 1841, held that the two laws could not act upon the same person and the same property cotemporaneously; and as the state law could not act without being subject to be defeated at any time, it ought not to be enforced at all. Ex parte Eames [Case No. 4,237] says that Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122, and Ogden v. Saunders, 12 Wheat. [25 U. S.] 213, established the doctrine that the enactment of a bankrupt law suspended all state insolvent laws as to future cases, where the administration of the latter acted upon the same persons and property, thus divesting the jurisdiction of the federal and giving it to the state tribunals. And see 19 La. 497; 5 Rob. [La.] 27; 15 La. Ann. 602. Thornhill v. Bank of Louisiana [Case No. 13,990] applied the same principle to an insolvent corporation being wound up under the local law. Com. v. O'Hara [6 Phila. 402] Dist. Ct. Pa.; Martin v. Berry, 37 Cal. 208, Sup. Ct. Cal.; Van Nostrand v. Carr [30 Md. 128] Sup. Ct. Md.; Cassard v. Kroner, 4 N. B. R. 569, Sup. Ct. Md. Martin v. Berry [supra] is a very full consideration of this subject. Van Nostrand v. Carr, 30 Md. 128; 21 La. Ann. 446; Barber v. Rodgers, 71 Pa. St. 362; Cassard v. Kroner [supra]; In re Stubbs [Case No. 13,557]; Reed v. Taylor [32 Iowa, 209]. Nothing is gained in agreement by further analysis of this numerous class of adjudications. They all depend upon a like reason, and that is substantially and literally applicable to the case of a general assignment irrespective of a state statute. There is nothing in conflict with these decisions worthy of citation or criticism.

The entire body of the law in reference to state legislation upon general subjects, cognizance of which is given to congress, is equally forcible to show that a general assignment is void as against the bankrupt law. When the inquiry is made whether a state regulation is in conflict with federal enactments regulating commerce, the militia, establishing a currency, or any other subject of national control, it is answered by the precise mode of inquiry and investigation demanded in this instance. The degree of conflict tolerated in those instances, and that which is held to be inconsistent and void, afford precedents for decision here. Were this a novel question, and need arose to go beyond adjudications of the precise thing, an argument equally demonstrative would be deduced from the facts and literal reasonings in Brown v. Maryland, 12 Wheat. [25 U. S.] 419; Wynne v. Wright, 1 Dev. & B. 19; McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316; Gilman v. Philadelphia, 3 Wall. [70 U. S.] 713; and the numerous other judgments of this class. They all go upon the ground that when congress has regulated a subject, a state shall not regulate the same subject. And, we add, much less can a citizen, of his own volition, so regulate the same matter as to take himself and his estate without the operation of the federal law.

The course of English adjudication upon the successive bankrupt laws of that country, the language of the British statutes and of our own which have adopted them, constitute an argument against the validity of a general assignment, for the equal benefit of creditors, which we should be unable to resist, were the

question wholly novel and uninfluenced by any adjudication in this country. Barnes v. Rettew [Case No. 1,019] is so full and satisfactory a history of English legislation and decision upon this subject, that we omit the somewhat extended analysis of the British statutes and judgments which we had prepared. The following is a brief condensation of its able argument, with, in some instances, a slightly more full quotation of statutory provisions. The assignment was made under the law of Pennsylvania, and although its peculiar provisions are considered, for the purpose of showing their antagonism with the bankrupt law, it is expressly said, as it is quite manifest upon principle, they are no more so than the general course of administration under an assignment to a trustee uncontrolled by statutory regulations. Judge Cadwalader shows, that from the time of James I., down to 1867, when our present law was enacted, there had been no substantial change in British legislation upon this subject. The act of James, unlike our own, contained no clause invalidating transfers which defeated the operation of the bankrupt law; but was simply a provision that if any trader should "make or cause to be made any fraudulent grant or conveyance of his lands, goods, etc., to the intent or whereby his creditors shall or may be defeated or delayed for the recovery of their just and true debts," he shall be deemed a bankrupt. This was farther simplified, in 1825, by an enactment that if a trader should make "any fraudulent grant or conveyance of any of his lands, tenements, goods, or chattels, * * * with intent to defeat or delay his creditors," he shall be deemed to have thereby committed an act of bankruptcy. It is shown that under these provisions it has been uniformly, by numerous judgments, held that a general assignment, for the benefit of all creditors equally, was an act of bankruptcy, upon the ground that such transfers were fraudulent, not at common law, or under 13 Eliz., but because they defeated the rights of creditors, secured by the bankrupt law, to the choice of a trustee, to the summary jurisdiction of the court, and to the ample control which the law intended to give them over the estate of their insolvent debtor. The familiar rule is invoked, that where a law is adopted from a neighboring state or country, which has received a judicial reading, the presumption of law is, that its interpretation is also included; and the rule is said to be applicable with great force to so long and often repeated a construction of a succession of statutes adopted by congress. And what is of still more significance, attention is called to the fact that congress did not leave the adoption of this rule to an implication of law, but by express enactment adopted nearly the words of the British decisions, by adding, in the law of 1867, that a transfer of property should be an act of bankruptcy, not only where it was fraudulent and to delay creditors, but if it was "to defeat the operation of the act." This "defeating the operation of

the act," and this "putting the assets in a different course of administration," and this "transferring them to another tribunal," are the reasons given in the English judgments why a general assignment is fraudulent. The following citations, here noted in the order in which they occur in this careful opinion, have all been re-examined, and we can say, with confidence, they fully sustain the conclusive argument, a mere outline of which we have suggested: 9 East, 487; 1 Cromp., M. & R. 779, 780; Twyne's Case, 3 Coke, 80b; Ex parte Bailey, 3 De Gex, M. & G. 534; Smith v. Cannan, 2 El. & Bl. 35; 16 Ves. 148; 17 Ves. 197; 1 Atk. 91; Id. 88; Kettle v. Hammond, Cooke, B. L. 111; Cowp. 123; 8 Durn. & E. [8 Term R.] 140; 4 East, 230; 1 Christ. Bankr. [2d Ed.] 188; Stewart v. Moody, 1 Cromp., M. & R. 777; Wilson v. Day, 2 Burrows, 827. The learned judge successfully shows that the judgments of Justice Swayne, in Langley v. Perry and Farrin v. Crawford [supra], and that of Justice Nelson, in Sedgwick v. Place [supra], do not necessarily decide this point. Ex parte Alsop (1859) 1 De Gex, F. & J. 289. Upon appeal, Lord Justice Turner, for the court, said: That under the several bankrupt laws anterior to 1859, it was well established that a general assignment, for the benefit of creditors equally, was an act of bankruptcy; and that the only question left to be discussed was whether the act of that year had changed the law, and proceeded to show that it had not. In Worseley v. Demattos, 1 Burrows, 467, upon motion for a new trial, in an issue out of chancery to ascertain whether an assignment was an act of bankruptcy, Lord Mansfield held it to be such, upon two distinct grounds: First, because there were features in it which made it void at common law, and under the statute of Elizabeth; and second, because it gave the debtor the choice of trustee, and took the assets to another tribunal. And in Pickstock v. Lyster, 3 Maule & S. 371, Le Blanc, J., holding that a general assignment was good at common law, takes pains to say that the bankrupt law was not in question, as no proceedings had been taken under it. This distinction between a conveyance void under the statute of frauds and one illegal because at war with the policy of the bankrupt law, is common to nearly all the British judgments. These two are referred to for the purpose only of showing how distinctly it is taken.

The following are but part of the older English judgments additional to those cited in [Case No. 1,091], reaffirming, in varying circumstances, the principle that an assignment of all a debtor's property, whereby its conversion into money and its distribution among his creditors is given over to a trustee of his own selection, is an act of bankruptcy, and void under the statute. Lindon v. Sharp, 7 Scott, N. R. 730; Hassel v. Simpson, 2 Dickens, 583, 1 Doug. 89; Butcher v. Easto, Id. 295; Porter v. Walker, 1 Man. & G. 686; Ex parte Bland, In re Murgatroyd, 6 De Gex, M. & G. 757. The elementary books are equally full. Eden, Bankr.

Law, 28; Roche & H. Baukr. 375 et seq. The force in this country of these English adjudications must not be weakened by the supposition that any latitude of construction is indulged in there not applicable in our own tribunals. It is as familiar law in England, as here, that all acts of bankruptcy must be expressly declared by statute. See Dutton v. Morrison, 17 Ves. 194; Ex parte Mavor, 19 Ves. 539, and Roche & H. Bankr. (Ed. 1873). When, therefore, it is held that a general assignment is void, it is a determination that it comes within the express provision of the statute declaring that conveyances to hinder or delay creditors shall be void. When the following very recent judgment was rendered, the doctrine which it reannounces had become a part of English statutory law. It is referred to only as an authoritative exposition of the past history of this question there. In Re Wood, 7 Ch. App. 302, the question was whether the transfer of all a man's property to secure a past debt was an act of bankruptcy. Mellish, Lord Justice, in arguing that the statute of 1869 had not altered the law in that respect, goes over the old principles, and enumerating what had been well established, at page 306 says: "There were various conveyances which the court held to be fraudulent: a conveyance which was void under the statute of 13 Elizabeth was one; so was a conveyance of a man's whole property for the benefit of all his creditors." After stating other instances, he adds that in all of them "the law assumed that such acts were of necessity done with intent to defeat or delay creditors."

In view of this long and uninterrupted judicial reading, where our own re-enactment has in such unambiguous terms used language which plainly includes it, by inhibiting conveyances "which defeat the operation of the act," it may well be asked, with emphasis, why shall not the American law be construed like the English, from which it was taken? Why shall not the familiar rule be applied, that where a judicially construed law is adopted, the construction is approbated by implication? We can imagine no conditions where the following language of the supreme court of the United States is more applicable: They say, where English statutes are adopted, "the known and settled construction of those statutes has been considered as silently incorporated into the acts." Pennock v. Dialogue, 2 Pet. [27 U. S.] 2. And see [Fisher's Lessee v. Cockerell] 5 Pet. [30 U. S.] 263; 5 Ohio, 74; 1 Kan. 226; 4 Kan. 353; 3 Ill. 288; 13 Ill. 17; 19 Ill. 151; 21 Vt. 256; 41 Mo. 453; 21 Wis. 274. This rule is one upon which the lawyer and the citizen have a right to rely, because, in ninety-nine cases in the one hundred, it is followed by courts. We understand it to be among the well-settled canons of construction which will not, without pressing reasons, be departed from. It is not, of course, constraining and so obligatory as to be yielded to in instances where the home interpretation has become unsatisfactory and productive of manifest evils. There are some such instances. But if anything were needed to complete and clinch the argument in favor of its application in this instance, it is found in the fact that, in the revision of the British law in 1869, the entire satisfaction of English judges and statesmen with the judicial interpretation which we have followed, in this opinion, is testified by inserting in the law an express provision making it an act of bankruptcy "that the debtor has in England or elsewhere made a conveyance or assignment of his property to a trustee or trustees, for the benefit of his creditors generally." This, then, is no accidental and hasty interpretation, calling for dissent and review by our courts. It embodies the results of hundreds of years of experience, with commercial conditions strikingly like our own, and with a people whose modes of action and sense of justice are so kindred as to make their well-matured and long-administered rules of civil conduct the very highest evidence of their substantial fitness here.

To our mind, one of the leading arguments against the validity of a general assignment grows out of the criminal features of the bankrupt law. They are pointedly referred to by Judge Woodruff in Hardy v. Binninger [Case No. 6,057], by Judge Hall in Re Smith [Id. 12,974], expressly, and in more general form in other judgments. These crimes cannot be punished at all without an adjudication in bankruptcy against the offender. This is quite plain, and was so ruled in U. S. v. Prescott [Id. 16,084]. If a general assignment is good against the bankrupt law, then every debtor clearly subject to criminal punishment would transfer his entire property to an assignee, thus leaving nothing to pay the expenses of proceedings in bankruptcy. It is certain creditors already sufficiently injured would not, without any hope of reimbursement, incur the expenses of an adjudication, simply for the purpose of punishment. It would seem that an act so protective of a criminal debtor, and throwing such impediments in the way of prosecution under the federal law, must be considered in conflict with it. The power to pass a bankrupt law is specifically given. But little argument would have been needed to have deduced it from the power to regulate commerce between the states in all instances of inter-state trade. Our active industry, and the great interests of trade, our bills of exchange, the transit of our grain crop, and the productions of our mines absolutely refuse to obey the behest of any class of politicians and stop at state lines. We do not believe there is a state in the Union in which commercial centers have not far more intimate relations with similar points in other states than in their own. Not one bankruptcy in fifty finds all the creditors in a single district. The subject to be regulated is one essentially national. Commerce in a most compendious sense is not more so. Owing to the imperfections of the present

law, the general argument which this department of the subject ought to enable us to put forth is somewhat wanting. But even the present system, with its protections against preferences, the choice of a trustee, the distant proof of debts without the personal appearance of witnesses, the extraordinary efficiency in examining into past, and preventing contemplated frauds, the summary examination of a debtor, and the full examination of his books, securities, and correspondence, all of which pass to the assignee in bankruptcy, the criminal jurisdiction, dependent wholly upon an adjudication, and the other safeguards intended to protect the mutual rights of creditors and debtor, when contrasted with that old, chronic instrumentality of fraud and delay known as a general assignment for the benefit of creditors, is so additionally protective as to dominate the latter by the mere force of its superiority and increased beneficence. A debtor, the fallacy of whose apparent propensity is known only to himself, having transferred to members of his own family a large portion of his estate, may, by one of these assignments, selecting his own trustee, render it morally certain that his fraud will never be successfully examined. The creditors, divided by distance, unknown to each other, and without concert of action, are seldom willing individually to incur the enormous expense of such litigation. The mode of probing the fraud by bill in equity is cumbersome and even awkward. The history of the law's administration shows that more such transactions are set aside in a single year, under the bankrupt law, than in ten by the old modes. The most frequent objection to the national law comes from those practitioners who advise the local debtor, and are therefore either interested against its efficiency, or, for want of familiarity with the practice under it, and that of the distant tribunals in which it is enforced, have no share in the profits of its administration. If it is long enough continued to become well understood throughout the country, and means are provided still further to carry into localities the performance of duties now executed at a few places only, an American bankrupt law will become as necessary a part of our civilization and commerce as is that of England to her people, and that of every civilized commercial country in Europe to their respective subjects. After much professional experience under previous laws, and judicial familiarity with the administration of this one, we believe the bankrupt law had far better be repealed than have it established that it is at the option of every debtor in the United States to determine whether he will or not submit himself and his assets to the control which the statute intends to give his creditors over them. Inevitably he first knows of his own insolvency. In every instance, therefore, he has the power of selection. When that selection is once made, such is the embarrassment by citizens of other states, growing out of the doctrine of parties in transferring causes from the state to the federal courts, that, in a vast majority of instances, the debtor may compel his widespread creditors, in the distant commercial centers where he has incurred his debts, to come to the county courts of the state for the settlement of those important questions, for the trial of which the bankrupt law secures a different tribunal. It is no disrespect to these local courts to call attention to the universality with which citizens of other states prefer a tribunal removed from the local influences which so naturally interfere with complete impartiality. They prefer a jury from the whole district, instead of the narrow vicinage in which the liberality of their debtor, by which their property has been squandered, has rendered himself personally popular. Every one of the great leading reasons which underlie the federal jurisdiction between citizens of different states, in all cases, those which led to the conferring upon congress of this bankrupt power, at the outset, for the regulation of this eminently national subject, forbid an interpretation of the present statute which would enable an attorney of the most common intelligence utterly to defeat every practical benefit intended to be secured by its adoption.

[NOTE. The Cleveland Insurance Company sued out a writ of error to this decision of the circuit court, and it came before the supreme court on a motion to dismiss said writ. 98 U. S. 366. Under section 4986, Rev. St., the circuit court had "general superintendence and jurisdiction" of all bankruptcy cases arising in the district court. No particular form of proceeding is required in order to take a case to the circuit court for review under this jurisdiction. Chief Justice Waite dismissed the writ of error for want of jurisdiction in the supreme court, for that tribunal has no control over the circuit court in bankruptcy matters. It is otherwise when the record discloses a suit at law or in equity. Mr. Justice Clifford, in a lengthy opinion, dissented from this view, upon the ground that the circuit court had not properly exercised the supervisory jurisdiction according to the bankruptcy act.]

---

GLOBE MUT. LIFE INS. CO. (COBB v.). See Case No. 2,921.

GLOBE MUT. LIFE INS. CO. (GARBER v.). See Case No. 5,214.

GLOBE MUT. LIFE INS. CO. (WININDGER v.). See Case No. 17,874.

GLOCESTER, The (MAHOON v.). See Case No. 8,970.

GLOUCESTER, The (KEANE v.). See Case No. 7,632.

GLOUCESTER CO. (SICKLES v.). See Case No. 12,840.