In re GUTWILLIG (HAHLO et al., Petitioners).

(District Court, S. D. New York. November 28, 1898.)

BANKRUPTCY—ACT OF 1898—VOLUNTARY ASSIGNMENTS FOR CREDITORS VOIDABLE WITHIN FOUR MONTHS.

Voluntary general assignments for the benefit of creditors made in conformity with the laws of the state of New York, though said laws are not treated as "insolvent laws" within the meaning of the last paragraph of the act of 1898, are voidable by the trustee of the debtor in bankruptcy if made within four months of the adjudication, because (1) incompatible with the purpose and policy of the bankrupt law, and the rights of creditors thereunder to the appointment of the trustee and the supervision of the assets in bankruptcy; (2) because in fraud of creditors within section 70 of the act, as the assignment deprives creditors of the important advantages secured to them under the act of 1898; and (3) because if not voidable the clause of section 3, making such an assignment ipso facto "an act of bankruptcy," would be practically nullified, and rendered of no use to creditors.

In Bankruptcy. On motion to restrain an assignee for benefit of creditors from disposing of the bankrupt's estate.

Epstein Bros. (Alexander Blumenstiel and Stillman F. Kneeland, of counsel), for petitioners.

George Fielder, for assignee.

BROWN, District Judge. The affidavit on which this order to show cause was heard states, that Henry Gutwillig on the 9th day of November, 1898, made a general assignment of all his property to William Leete Stone, Jr., for the benefit of his creditors, and that the assignee has taken possession of the property; that on November 10th the petitioning creditors filed a petition in this court that said Gutwillig be adjudged a bankrupt, and praying that the assignee be restrained from disposing of the assigned property or its proceeds until the adjudication upon the petition. Sections 3, 4 and 59 of the act of July 1, 1898, declare such an assignment to be itself "an act of bankruptcy," and authorize creditors within four months thereafter to file a petition in bankruptcy against the insolvent debtor. Under sections 18 and 19 of the act, which provide for notice and subpoena to the debtor, the latter may contest the matters alleged against him in the petition, and may have, if demanded, a jury trial upon the issues. Section 4 provides that "upon an impartial trial, the debtor may be adjudged an involuntary bankrupt." By sections 55 and 44 a meeting of creditors is required to be held after an adjudication of bankruptcy, at which a trustee of the bankrupt's estate is to be chosen by the creditors, or upon their failure to agree, to be appointed by the court.

From the above provisions it is obvious that in every case of involuntary proceedings in bankruptcy, a considerable interval of time, more or less, must elapse between the filing of the petition and the appointment of a trustee competent to take and administer the estate. If in such cases the assigned assets legally belong to the bankrupt's estate, to be administered by the bankruptcy court and the trustee in accordance with the provisions of the bankrupt act, it is the duty of this court under section 2, subdivisions 3 and 15 of the statute, upon

suitable application, either to grant an order restraining the voluntary assignee from disposing of the property in the meantime, or else to appoint a receiver to take immediate possession of it.

Accordingly, the principal question discussed on this motion has been, whether an assignment without preferences made since the act of 1898 went into effect and made in conformity with the laws of this state regulating such assignments, is voidable by the trustee in bankruptcy.

If such an assignment with the state laws regulating the same and the distribution of the debtor's effects thereunder, could be treated as amounting substantially to a bankruptcy or insolvent act, the case of Manufacturing Co. v. Hamilton, 51 N. E. 529, recently decided on demurrer in the supreme court of Massachusetts, would be in point. There the plaintiff had been proceeded against as an insolvent debtor by a petition filed against it by the defendants in the insolvency court under the insolvent acts of Massachusetts, after the bankrupt act of July 1, 1898, went into effect. The insolvent acts of Massachusetts provide for such involuntary proceedings against a debtor, the seizure of his estate, the distribution of his assets, and the discharge of the debtor in certain cases, so far as the jurisdiction of the court extends. In view of the provisions of the last section of the act of 1898, that "proceedings commenced under state insolvency laws before the passage of this act shall not be affected by it," it was held by the supreme court of Massachusetts that it was "clearly the purpose of congress that the new system of bankruptcy should supersede all state laws in regard to insolvency from the date of the passage of the statute." In its opinion as reported the court says:

"The rights of all persons in the particulars to which the act refers, are to be determined by the act from the time of its passage. Among these rights, is the right to have insolvent estates settled in bankruptcy under the provisions of the act, including the right to have acts of bankruptcy affecting the settlement of estates determined by it; to have the rights of debtors to file voluntary petitions, and of creditors to file involuntary petitions determined by it; and to have preferences and liens governed by the provisions of it. Sections 60, 67. These various provisions, affecting the rights and conduct of debtors and creditors, are different from those previously existing in most of the states, and perhaps different from those found in the laws of any state, and they supersede all conflicting provisions."

See, also, Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565.

Proceedings like those under the Massachusetts act rest wholly upon state statutes. Such statutes are practically bankruptcy acts, operating, however, only to the extent of the power and jurisdiction of state authority.

Voluntary assignments for the benefit of creditors, on the other hand, as practiced in this and other states, do not originate in the state statutes, but in the common-law power of the debtor to dispose of his property. The statute of this state passed in 1860 and subsequent acts regulate to a certain extent this power of distribution, and provide various securities therefor. To a considerable extent, therefore, these statutes and assignments made in conformity with them, though they make no provision for the discharge of the debtor, do cover in part the original purpose of bankruptcy laws, namely, the

equal distribution of the debtor's property among his creditors. The New York statutes, nevertheless, allow, besides preferences to employés, preferences to other creditors at the debtor's option to the extent of one-third of the assets (see Bank v. Seligman, 138 N. Y. 435, 34 N. E. 196); in this regard being, therefore, directly opposed to that equality of distribution which bankruptcy laws aim to secure. Though the precise limits of the terms "bankruptcy" and "insolvency" in defining the character of statutes, may not be easy to determine (see Sturges v. Crowninshield, 4 Wheat. 194–196; In re Klein, 1 How. 277–280. I do not think that a general assignment made in conformity with laws like those of the state of New York, can be considered "as a proceeding commenced under state insolvency laws" within the meaning of the last paragraph of the act of 1898; and the question presented on this motion must therefore be decided upon the general principles of bankruptcy law and upon the other provisions found in the present act.

In support of the validity of such assignments as against the trustee in bankruptcy it is urged (a) that the trustee can take no property save that which the statute gives him; (b) that the present act contains no provision making such assignments voidable, unless they are made with intent to defraud creditors; (c) that by section 70 the trustee takes the "estate of the bankrupt as of the date he was adjudged a bankrupt"; and it is claimed that in consequence of this provision the trustee's title cannot reach back so as to cover property previously assigned by the bankrupt. These objections seem to me to be insufficient.

1. The object of the bankruptcy act is declared to be "to establish a uniform system of bankruptcy throughout the United States." The most fundamental element in every system of bankruptcy has been to provide for and regulate the distribution of the bankrupt's property among his creditors, and to do this by means of the agencies created by the act. That originally was its only purpose. Later, a second element has been added in the provisions for the bankrupt's discharge, upon such terms and conditions as the act may prescribe. The present act fully provides for both of these objects. From the moment an act of congress establishing a uniform system for the administration of an insolvent's estate takes effect, every local or private system for the administration of the same assets, whether originating in the state statutes, or in the debtor's common-law power to transfer his property, and regulated, as in this state, by state law, is necessarily superseded provided the bankrupt act is invoked by creditors within the statutory period of limitation. Both systems cannot operate side by side as respects the same estate; the one must necessarily supersede the other; and the state and voluntary systems must yield to the system established by congress pursuant to the constitution. Voluntary assignments of all a debtor's property in trust for creditors, are just as incompatible with the purposes of the bankrupt act as state insolvent systems, and for precisely the same reasons, viz. because if allowed to stand as against a trustee in bankruptcy they defeat the most essential elements of the bankrupt law; namely, the distribu-

tion of the debtor's assets in the manner prescribed by the bankrupt act, and through the agencies to which that act commits them. Creditors are vested by the act itself with a right to have the bankrupt's assets administered not only in accordance with the act, but through the instrumentalities and under the supervision which the act provides; and this right manifestly cannot be nullified at the mere option of the debtor. And yet this is precisely what would happen, if voluntary assignments could stand against the trustee in bankruptcy.

2. Our bankrupt acts have been largely modeled upon the English statutes of bankruptcy. Many of their phrases are transferred literally to our own acts, and these phrases are presumably used by congress in the sense in which they have been previously interpreted in the English law. Since the time of George II. and even prior, the current of English adjudications, followed by our own, has been that a voluntary assignment of all his property by an insolvent debtor to an assignee of his own choosing, though without preferences, is itself an act of bankruptcy, a fraud upon the act, and hence a fraud upon creditors as respects their rights in bankruptcy, and voidable at the trustee's option, even without any express provision to that effect in the statute. These principles, and the long line of authorities in support of them from the time of Lord Mansfield, have been clearly set forth in the elaborate review of the subject by Judge Cadwalader in Barnes v. Rattew, 8 Phila. 133, 2 Fed. Cas. 868, and by Judge Emmons in Globe Ins. Co. v. Cleveland Ins. Co., 14 N. B. R. 311, 10 Fed. Cas. 488, and need not be repeated here. The same views were adopted and reinforced by Judge Johnson on appeal in the case of In re Biesenthal, 15 N. B. R. 228, 3 Fed. Cas. 76, which settled the law in this circuit under the act of 1867. The general ground upon which all these cases, in the absence of express statutory enactments, have proceeded is that a voluntary assignment is in effect an act of bankruptcy, and is "fraudulent, not at common law, or under 13 Eliz., but because it defeats the rights of creditors secured by the bankrupt law to the choice of a trustee, to the summary jurisdiction of the bankruptcy court, and to the ample control which the law intended to give them over the estate of their insolvent debtor," and is therefore a fraud upon the act and upon creditors' rights, which prevents the assignee from holding the assigned estate as against the trustee in bankruptcy.

These general principles and the decisions enforcing them are as applicable to the present act as to the various English bankruptcy statutes and to our own acts of 1867, 1841 and 1800. They are not founded upon any special phrases in the bankruptcy statutes but upon the general scope, purpose and policy of bankruptcy laws, and the resulting rights of creditors.

Successive bankruptcy acts have from time to time adopted various additional provisions drawn from these prior adjudications; thus confirming by legislation in many particulars what may be called the common law of bankruptcy. But the absence of provisions declaratory of the settled law in no way diminishes its force or applicability. The act of 1867 was the first to expressly declare

voidable a debtor's transfers made "with intent to defeat or delay the provisions of the act"; but that had been the long-settled law; and voluntary general assignments had been long held to be acts of bankruptcy and void without inquiry into the debtor's intent, his intent to defeat the bankrupt act and to defraud creditors of its benefits being conclusively presumed from the necessary effect of his acts; and such was the weight of authority under the act of 1867. In re Burt, 1 Dill. 440, 4 Fed. Cas. 855; In re Goldschmidt, 3 N. B. R. 164, Fed. Cas. No. 5,520; Boese v. King, 108 U. S. 385, 2 Sup. Ct. 765.

But as the act of 1867 used the words "intent to defeat," etc., some decisions held that voluntary assignments might be validated by a finding of the absence of any such intent or any intent to defraud creditors. Haas v. O'Brien, 66 N. Y. 597. The statute of 1898 (chapter 541, § 3, subd. 4), however, by express enactment returns to the original doctrine, and makes an assignment for creditors ipso facto an "act of bankruptcy," without regard to the debtor's intent or his solvency. And though the present act unlike that of 1867 contains no clause expressly declaring that transfers "in fraud of the act" are void, it expressly dissolves all such liens acquired at law or in equity within four months prior to filing the petition as are "given or permitted in fraud of the act"; and this shows the general intent of the act in that regard to be the same as that of 1867.

3. The provision of the present act making a voluntary assignment ipso facto an act of bankruptcy in accordance with the original doctrine, could not have been intended as a mere vain and empty declaration, of no value to creditors. These words on the contrary can mean no less in the statute than they meant in prior decisions, viz. that both the bankrupt and the estate sought to be assigned in fraud of the act become thereby instanter subject to the operation of the bankrupt law.

Upon such an assignment, creditors are authorized to proceed instanter against the debtor as under the old law. Careful provisions are made in the present statute for these involuntary features and for preserving this right of procedure; and if notwithstanding these provisions, a voluntary assignment could stand valid as against the trustee in bankruptcy afterwards appointed, the whole object of declaring such an assignment to be an act of bankruptcy would be nullified. In that case, though the creditors invoking this express provision might immediately put the debtor into bankruptcy, they would thereby gain no control of any assets nor derive the least benefit from the bankruptcy proceeding; and while thus subjecting themselves to expense in the pursuit of their illusory rights, the only result would be to benefit the bankrupt by giving him a discharge for nothing. This cannot be the intent of the law. On this point Johnson, J., in the Case of Biesenthal, above cited, observes:

"To permit the administration of the assets of an insolvent and bankrupt debtor to be committed to a trustee of his choice and then to reduce the bankrupt law to a mere process of discharging a debtor from his debts, is quite inconsistent with any fair view of the purpose of this legislation."

If such an intent was not credible under the act of 1867, still less is it credible in the new law declaring such an assignment to be an act of bankruptcy. In the eye of the bankrupt law, the voluntary assignee is an accómplice in a fraud upon the act, for the reasons above stated, and therefore can hold nothing by the assignment as against the trustee in bankruptcy.

4. Section 67, subd. e, of the present act provides that any transfers made within four months prior to the filing of the petition "with intent to hinder, delay or defraud creditors, shall be null and void," and that the property shall "pass to the trustee." Except as to the time limitation this is in substance the provision that is found in the early English bankruptcy statutes and is the only provision they contained on this subject. But this provision as construed in the bankruptcy courts was not restricted to a condemnation of frauds at common law, or under 13 Eliz., but extended to all general assignments by an insolvent debtor to an assignee of his own choice, because as above stated they defraud creditors of the control, supervision and instrumentalities for the distribution of the estate, which the statute has provided for the creditors' benefit; and because the debtor must be held to have intended the necessary effect of his act.

The same construction should follow the same provision of the present act, except in so far as other provisions in the act may appear to be designed to take the place of this extended construction, such perhaps as may have been intended by clause 4 of section 70.

That section (70) declares that the trustee "shall be vested by operation of law" with the right to all "(4) property transferred by the bankrupt in fraud of creditors." No question of the bankrupt's intent is here involved. It is sufficient to bring the case within this provision, if the transfer operates to defeat any substantial rights of creditors under the bankrupt law; and the clear weight of authority has long been that general assignments by a debtor do necessarily have this effect.

Subdivision d of section 67 also declares liens to be valid that are "given or accepted in good faith and not in contemplation of or in fraud upon this act"; implying that liens should not be valid if given in fraud of the act; and condemning therefore by implication the lien or title of a mere voluntary assignee.

5. The clause in section 70 providing that the trustee shall be vested by operation of law with the title of the bankrupt "as of the date when he was adjudged a bankrupt," does not, I think, affect the question here considered. It was designed to fix the necessary dividing line between the bankrupt's past and future acquisitions. It debars the trustee from claiming the bankrupt's after-acquired property, but not his property previously transferred in fraud of the act. It means also that whatever the trustee acquires shall be deemed to vest in him as of the date of the adjudication, instead of the date of his election or appointment. But he is not limited to the bankrupt's own title and rights as they existed on that date, since clause 4 of the same section gives to the trustee property previously transferred in fraud of creditors, while section 67 provides for vacating

also various incumbrances which the bankrupt himself could not have attacked.

6. Aside from the above general considerations the specific provisions of the present bankrupt act afford to creditors such important advantages over an administration of assets through a voluntary assignee, under the state law, that such assignments must be held to be "transfers in fraud of creditors" because they necessarily deprive them of those advantages, viz.: (a) The choice of the trustee, and therewith the greater security, supervision and control in the disposition of the assets. (b) Liens by attachment, execution or other proceedings at law or in equity within four months, are voidable under the bankrupt law, but not so under a voluntary assignment. This is a difference that is often of extreme importance. (c) Under this assignment and by the state law applicable to it, employés are preferred without limitation as to amount or time; by the bankrupt law they are limited to $300 each and to claims accruing within three months. (d) The fees and commissions may reach 5 per cent. chargeable under voluntary assignments in this state, but are much less under the bankrupt law.

Whether the act be considered therefore in principle or in detail, I must hold that a voluntary assignment for creditors which by the statute is made an "act of bankruptcy," is voidable by the trustee, and that the assets should be brought into the bankruptcy court. The motion for a restraining order is therefore granted.