CLARK·et al. v. AMERICAN MANUFACTURING & ENAMELING CO. et al.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1900.)

No. 341.

1. BANKRUPTCY—ACTS OF BANKRUPTCY BY CORPORATION—GENERAL ASSIGNMENT.
    Where the officers of a corporation, acting under authority of a reso-
    lution of the board of directors, and in pursuance of a vote taken at a
    meeting of the stockholders, though against the objection of a minority
    of the stockholders, make a general assignment of all its property to
    trustees for distribution among its creditors, · it is an act of bankruptcy
    on which a petition in involuntary bankruptcy against the corporation
    may be maintained.

2. SAME—INVOLUNTARY PETITION—REFERENCE.
    Where answers are filed to a petition in involuntary bankruptcy, it is
    proper for the court to refer the case to a referee in bankruptcy to take
    and return the evidence and report upon the questions presented; and
    it is no ground of objection to such a course that the only questions
    arising in the case are questions of law, the action of the referee being
    always subject to the control of the court.

Appeal from the District Court of the United States for the District
of West Virginia.

This is an appeal from 'a decree of the United States district court for
the district of West Virginia, entered on the 12th day of July, 1899, whereby
the American Manufacturing & Enameling Company was, at the instance of
J. E. Poling & Co. and others, creditors of said company, adjudged an in-
voluntary bankrupt. The said company was a corporation doing business
under the laws of the state of West Virginia, in the town of Hendricks,
Tucker county, in said state. On the day of the organization of the com-
pany, and at the first meeting of its board of directors, to wit, on the 15th
day of March, 1898, one of the appellants, Charles B. Clark, the husband of
Mrs. Alice C. Clark, the other appellant, was elected president of the corpo-
ration, and they, together with J. P. Bryan, William A. Hoffman, and C. P.
Brown, were elected as its board of directors; and the said C. P. Brown
was elected its vice president, Joseph P. Bryan secretary, and William A.
Hoffman treasurer. The company thus organized, commenced operations, but
it was unsuccessful, and at a special meeting of the directors held on the 11th
day of May, 1898, dissensions having arisen, between said Clark and ·other
members of the board of directors, and the bona fides of his acts' questioned,
the office of president was declared vacant, said C. B. Clark removed as presi-
dent, and J. P. Bryan duly elected in his place and stead. This action on
the part of the company was resisted by Clark and wife, who thereupon
instituted proceedings in the state court of West Virginia, seeking to retain
control of the company, and counter suits were inaugurated in the state
courts for the same purpose. In one of said suits a temporary receiver was
appointed to take charge and hold the assets of the company, and from
this order appeal was immediately taken to the supreme court of appeals
of the state, and the company's property restored to the hands of the cor-
poration, through its president, the said J. P. Bryan. Pending· this litiga-
tion, the business of the company was practically suspended, suits in various
forms instituted against it, and judgments for considerable amounts recov-
ered. Subsequently, at the annual stockholders' meeting held on the 16th
day of January, 1899, a resolution was passed reciting that the company had
become largely indebted; that numerous judgments had been obtained against
it, and that it was without available assets, and that a creditors' suit, con-
vening its creditors, had been instituted against it; that differences had arisen
among the stockholders and· directors of the company as to the conduct
and management of its business, and that it was the sense of the stock-

holders that it was to their interest and that of the corporation to have the company's property conveyed to a trustee or trustees, for the purpose of paying its debts, and the directors were authorized and directed to execute a proper conveyance for that purpose. On said day the directors met, passed resolutions directing its president to convey all property, both real and personal, together with the books of account and evidences of debt, belonging to the company, to three trustees, with authority to them to dispose of the property. The adoption of these resolutions, by both the directors and stockholders, was opposed by said Clark and wife. On the said 16th day of January, 1899, the company, acting through J. P. Bryan, its president, and J. A. McNealey, its secretary, and in accordance with the resolutions of its stockholders and board of directors aforesaid, made a general deed of assignment of all its property to trustees for the purpose of paying its debts ratably, with a proviso that any surplus remaining after payment of the creditors should be paid to the treasurer of the company by the trustees. Said trustees thereupon took charge of the property, estate, and effects of said company under said deed. After the execution of this deed, to wit, on the 25th day of February, 1899, the involuntary bankruptcy petition herein was filed, based upon the insolvency of the corporation, and the making of said assignment as acts of bankruptcy. The company, by said J. P. Bryan, its president, appeared, waived service of process and of the petition, and filed its answer to the petition; and the creditors of the company, other than the said Alice C. Clark, likewise entered their appearance; and the trustees in the deed of assignment appeared, tendered their resignations as such trustees; and the court, by consent of the parties, appointed A. J. Valentine, one of the trustees named in the assignment, to take charge of and hold the property of the company until a trustee could be regularly elected. Subsequently, the said C. D. Clark, claiming to be president of the company, and the said C. D. Clark and Alice C. Clark, his wife, filed their separate answers to the involuntary petition in bankruptcy, in which they denied that J. P. Bryan was lawfully president of the company, or that said Clark had ever been legally removed as president of the company, or that the company was insolvent, or that the stockholders of the company and its directors had ever legally authorized the assignment to be made of its estate and effects; and, moreover, charged that the said Bryan, and those acting with him, claiming to represent the company, were acting fraudulently in what they did, and in collusion with the petitioners in the involuntary bankruptcy proceedings, for the purpose of obstructing the company in its lawful business and destroying its existence. Under this state of the record, an order was entered referring the cause to a referee in bankruptcy, with instructions to ascertain and report whether the assignment was legal, and duly authorized by the stockholders and board of directors of the company; whether it was a legal board; whether the parties signing the deed of assignment had been regularly authorized to do so; whether said deed of assignment was the act of said corporation; together with any other matter deemed pertinent as to the legality or illegality of said assignment; and leave was given to any of the parties to file additional or amended pleadings before the referee. The cause proceeded before the referee. Evidence was taken by him, and he subsequently made his report, determining the several issues raised by said Clark and wife adversely to them. To this report sundry exceptions were filed by the said C. B. Clark and wife, and thereupon the order appealed from of the 12th day of July, 1899, was entered. The assignments of error are 17 in number, but they relate chiefly to the question of the alleged error of the court below in declaring the company to be bankrupt, because of the various objections raised by them to the legality of the proceedings of the stockholders and board of directors of the company. They insist, in brief, that their several exceptions to the referee's report should have been sustained; the said C. B. Clark recognized as the representative of the corporation, instead of J. P. Bryan and the officers acting with him; and that the court should have treated the assignment made by the company as a nullity, because made collusively and without authority; and, further, that the court erred in making a reference in the case at all, the questions involved being purely matters of law.

A. M. Cunningham, for appellants.

William G. Conley, for appellee American Manufacturing & Enameling Co.

C. D. Merrick (E. D. Talbot, on brief), for appellee J. E. Poling & Co.

Before GOFF and SIMONTON, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge, after stating the facts as above, delivered the opinion of the court.

It will not be necessary, in the view we take of this case, to pass upon all of the assignments of error made, for the reason that, if the deed of assignment was valid, then most of the objections urged by the appellants are concluded by that act, and need not be considered. There would be much force in many of the positions taken by the appellants if there was evidence in the record to support their charges, either of fraud or collusion, by and on the part of the company and its officers, with its creditors, to throw it into bankruptcy. This proof is utterly lacking, and no effort apparently was made to sustain these charges, and the record presents a case in which the stockholders and a legal board of directors of the corporation, in lawful meetings assembled, by resolutions authorized its duly-chosen officers to make conveyance of its property for the purpose of meeting its obligations, as far as the same would prove sufficient. The action of the board of directors, and of the stockholders of this company, in the matter of the change of its officers, and the execution of this assignment for the benefit of its creditors, seems to have been lawfully and properly entered into in good faith, with only the appellants, minority stockholders, objecting. The company was apparently in a state of disorganization virtually from the beginning, and with the dissensions in its ranks, the number of lawsuits it had to encounter, its failure to successfully carry on any business should not have been a surprise, even to those most enthusiastic over its prospects. Conceding the assignment to have been lawfully made, the question presented is an exceedingly simple one, under the bankruptcy law. The bankruptcy act (section 3, subd. 4) makes a general deed of assignment an act of bankruptcy; and this, regardless of whether the makers of the deed are insolvent or not. Indeed, no question under the present bankrupt law has been perhaps so well settled as this; it being the only one thus far, as we recall, that has been passed upon by the supreme court of the United States. In re Gutwillig (D. C.) 90 Fed. 475–478; Id., 34 C. C. A. 377, 92 Fed. 337; Lea v. George M. West Co. (D. C.) 91 Fed. 237; Davis v. Bohle, 34 C. C. A. 372, 92 Fed. 325; George M. West Co. v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098.

There was no error in the action of the lower court in referring the case, as it did, to a referee. It is true that many of the questions involved were legal ones, but their correct determination depended upon the evidence which had to be taken, and, if purely questions of law, the action of the referee was in all respects subject to the control of the court, and its action in first having the reference would afford no

ground for exception. Upon the filing of an answer to an involuntary petition in bankruptcy, it is quite usual, and in many instances the only way that the court can proceed, to have one of its referees take the evidence, and report upon the various questions presented, returning to the court the evidence taken for its consideration. This was, in effect, what was done in this case. We find no error in the judgment of the court below, and the same is affirmed.