Dolson agt. Kerr.

# SUPREME COURT.

## DOLSON and another agt. KERR, sheriff, &c.

*Assignment for the benefit of creditors — effect of subsequent bankruptcy proceedings — judgment recovered by creditor.*

A general assignment for the benefit of creditors, without giving priority, is superseded by proceedings in bankruptcy.

Where a judgment is recovered by a creditor, in the ordinary course of practice of the courts, and without collusion between the creditor and debtor, for the purpose of giving such creditor priority over others, that judgment, and the levy under it, is good even as against an assignee in bankruptcy subsequently appointed.

On the 11th day of August, 1873, S., being largely in debt, made a general assignment to the plaintiffs for the benefit of his creditors, sharing alike, and no creditor having priority, one over the other. On the same day, one F. commenced an action to recover, and recovered, a judgment upon a note which S. had given to him upon the purchase of a pair of horses, said judgment being recovered on the 3d day of September, 1873, and on the same day an execution was issued and a levy made upon the horses, and they were sold under the execution on the 12th day of September, 1873. The plaintiffs, the general assignees of S., commenced this action to recover the value of the horses on September 9th, 1873. October 11, 1873, after the levy had been made upon the property under the execution of F., bankruptcy proceedings were commenced by A., one of the creditors of S., and a general assignee in bankruptcy was appointed January 22, 1874. The plaintiffs, on the 11th day of August, 1874, executed a paper writing to G., the assignee in bankruptcy, which writing is a full recognition of the regularity of the bankruptcy proceedings, that S. was adjudged a bankrupt, and that he, G., as assignee in bankruptcy, took the title which they, as general assignees, had acquired by the assignment.

*Held,* that the action could not be maintained by plaintiffs for their benefit, because the bankruptcy proceedings set aside their assignment *ab initio;* that they could not maintain the action in behalf of the general assignee in bankruptcy, because the recovery of F. was without collusion

with S., to give him a priority; that F. was entitled to the priority which his levy gave him.

*Ulster Circuit, January,* 1877.

THIS was an action to recover the value of a pair of horses sold by the sheriff under a judgment and execution in favor of one Chester Freer, and against one John C. Shaffer, whose general assignees, for the benefit of creditors, the plaintiffs were. At the close of the case the defendants moved for a nonsuit, on which motion the following oral opinion was pronounced, and reported by Spencer C. Rodgers, court stenographer.

*J. N. Fiero,* for plaintiffs.

*J. M. Cooper* and *A. Schoonmaker, jr.,* for defendants.

WESTBROOK, *J.* — Preliminarily to the statement of my views, let me state what facts in this case are undisputed. On the 11th of August, 1873, John C. Shaffer, being largely in debt, made a general assignment to the plaintiffs, Charles W. Deyo and William Dolson, for the benefit of his creditors, the creditors sharing alike, and no creditor having priority, one over the other. On the thirteenth of August (being two days after that date) the hotel (which property passed to the assignees by the general assignment) together with the personal property, was leased to Mrs. Shaffer until the following spring at fifty dollars per month, she agreeing to quit whenever the property was sold. On the 11th of August, 1873, Freer commenced an action to recover, and recovered judgment upon a note which Shaffer had given to him upon the purchase of a pair of horses, and such proceedings were had in that action that, on the 3d of September, 1873, he recovered a judgment for $299.57. On the same day an execution was issued upon the judgment, and on the same day a levy was made upon the pair of horses which

had been previously sold by Freer to Shaffer, and the horses were, in fact, sold on the 12th day of September, 1873. The present plaintiffs began this action, I assume, sometime in September, 1873 —

Mr. FIERO — September ninth.

The COURT — September 9, 1873. Bankruptcy proceedings were commenced by Atkins, one of the creditors of John C. Shaffer, in the United States district court for the southern district of New York, sometime in October, 1873 —

Judge SCHOONMAKER — October 11, 1873.

The COURT — The 11th of October, 1873. After, therefore, the levy had been made upon the property under the execution of Freer, a general assignee in bankruptcy was appointed in those bankruptcy proceedings some time during the year 1874. The general assignee in bankruptcy, Daniel W. Guernsey, was appointed some time during the year 1874; the exact date does not become important —

Judge SCHOONMAKER — Twenty-second of January, 1874.

The COURT — The plaintiffs in this action, on the 11th day of August, 1874, under their hands and seals, executed to Daniel W. Guernsey a paper writing, which is entitled " district court of United States for the southern district of New York. In the matter of John C. Shaffer, bankrupt, in bankruptcy, southern district of New York, to wit." It recites the making of the assignment to Deyo and Dolson by Shaffer, August, 11, 1873, and also recites the commencement of the proceedings in bankruptcy and the appointment of Guernsey as general assignee, and then it declares : "And whereas said assignee has entered into and is in full possession of the said property, and has made application to this court for its order authorizing and directing him to sell the same, therefore, in consideration of one dollar, and in order that a purchaser or purchasers of such property, or any part thereof, on a sale by said assignee, may receive such benefit, if any, which we, as such assignees, have in or to said property, if any part thereof, they stipulate and agree to unite with the assignee

in bankruptcy, as such assignees, in the conveyance or conveyances, if more than one, to the purchaser or purchasers of such property on a sale thereof by the assignee in bankruptcy." The paper seems to be a full recognition of the regularity of the proceedings in the bankruptcy court, and a full recognition of the fact that he was adjudged a bankrupt, and a full recognition of the fact that the assignee in bankruptcy took the title which the general assignees had acquired by the assignment. These are the facts of the case as I understand them to be.

I was at first inclined to send this case to the jury upon the question of actual fraud in the assignment, for we have spent some time in trying that issue (and I would like very much to have the verdict of the jury upon that issue); but even should I do that, and if I should then set aside the verdict because the action could not be maintained, and the court above should sustain my ruling, the action would still have to come back for a retrial. It could only be got clear of by a new proceeding in this court, and the saving of expense which I hoped to get by adopting that practice I would not succeed in getting. I think it is better, therefore, that I should dispose of this whole case upon the questions of law in it, and if I am wrong, the question of fact can afterwards be disposed of, and if I am right, that ends the case forever.

I ought to say, before disposing of these questions of law, that upon the issue of fraud I have no doubt in the case whatsoever (I had none upon the previous trial; I have not any now), though, as it is a question of fact, and made so by the statute, I would be compelled to submit it as a question of fact to the jury, unless I dispose of the case upon the other ground. But as I intend to dispose of this case upon the other ground, there can be no impropriety in my stating that I do not think the evidence would be sufficient to justify a verdict in favor of the defendant upon the ground of actual fraud, and these are, in short, my reasons for it: The assignment

was general.  It was in favor of all creditors, share and share alike.  No one creditor could attain any priority over the other under the assignment, provided the assignment was honestly executed and enforced.  I know it is urged, from the fact or circumstance of the lease which was made to the wife, the jury would be justifiable in drawing the inference that the whole assignment was made for the purpose of securing some benefit to Shaffer.  The wife has as good a right under the laws, as they now stand, to make a bargain for herself as any other person, the same as a *feme sole* or a male.  I do not think the mere circumstance of the lease being made to the wife would justify the jury in finding actual fraud.  That property was in the hands of the assignees, and it had to be disposed of to the best advantage for the creditors.  By the lease they would secure a present revenue or income from the property, and as they were unprepared at that time to sell, having no customer, it was kept from depreciation pending that sale.  In addition to that, we have the positive testimony of Shaffer and Deyo and Dolson that there was no fraud intended, only an honest distribution of the property among the several creditors.  There could be really no fraud intended in the making of the assignment, unless the assignees had been, more or less, parties to the fraud; and when two men, of the character and standing of Deyo and Dolson, swear so positively as they do that this was done in good faith, I believe their statements, and I believe that this assignment was made with the honest intent of making a fair and just distribution of the property among creditors; and I have no doubt it would have been far better for all parties if all parties had acquiesced in allowing the assignees to dispose of the property and execute their trusts.

I have now given my views upon the question or issue of fraud.  Can this action be maintained under the facts which I have stated?  Now, I understand the following principles have been settled : It has been held that a general assignment for creditors, without giving priority, is superseded by pro-

ceedings in bankruptcy, and for the reason, where a person is insolvent and makes an assignment, it places the property beyond the power of the bankrupt court, if it stands; and as the policy of the bankrupt law is to leave the whole funds and all the property in the hands of the bankrupt court, any thing which takes it out of the power of the bankrupt act is fraud, in law, upon that court, and that judge BLATCHFORD also holds in a case to which my attention has been called. I will not refer to that case now. It has further been held, and held in a case in the supreme court of the United States, in *Wilson* agt. *City Bank* (17 *Wallace*, 473), that where a judgment is recovered by a creditor in the ordinary course of practice of the courts, and without collusion between the creditor and debtor for the purpose of giving such creditor priority over others, that that judgment, and the levy under it, is good, even as against an assignee in bankruptcy subsequently appointed. Now, apply those principles to this case, without any regard now to this decision that judge BLATCHFORD has made, and how does this case stand? You can't recover as general assignees; why? Because the proceedings in bankruptcy adjudge them totally void *ab initio*. They relate back to the actual assignment, so that you have no standing in court under your assignment. You can't recover for the benefit of the assignee in bankruptcy, simply and only because the general assignee in bankruptcy does not take priority over the judgment and execution creditor. And I may say, in passing, that, from the circumstances of this case, no one would hold that the recovery of Freer was by collusion with Shaffer for the purpose of giving him a priority; on the contrary, the express evidence of Shaffer is, that because he was pressed by Freer, and because he was pressed by others, he took the step which he did, and made the general assignment. The facts of this case, therefore, are clear that the recovery of Freer was not by collusion with the debtor for the purpose of giving Freer the priority; on the contrary, the judgment was recovered without col-

Dolson agt. Kerr.

lusion with him, and according to the ordinary course of practice. For these reasons, therefore, I think this action cannot be maintained.

Now let me say a single word about the decision referred to, and a very recent one. It was made on the 9th of December, 1876, and within a month, in *McDonald, as Assignee,* agt. *William T. Moore and others,* and is reported in New York Weekly Digest of December 25, 1876, and therefore, of course, there can be no blame attached to the plaintiff's attorneys for bringing this action and seeking to maintain it, for the law under the bankruptcy act has always been more or less unsettled. In the case reported, the assignee in bankruptcy was before the court, the general assignee was before the court, and the creditor who had seized the property was before the court. These facts appeared : That, on the 28th of December, 1875, David Solinger, being insolvent, made a general assignment, under the laws of the state of New York, of all his property to the defendant, Mayer, in trust to pay his creditors, share and share alike. Mayer accepted the trust, and took possession of the property on the said day, and complied with the statute as to filing a bond and inventory. On the 4th of January, 1876 (that is, some six or seven days after the assignment) the defendants, Moore, Tingue & Co., recovered a judgment, in a state court, against Solinger for $1,508.38, and on the same day an execution was issued to the sheriff, who is a defendant in the suit, and placed in his hands.

On the 5th day of January, 1876, the next day after this, a petition in bankruptcy was filed, and plaintiff was chosen the general assignee in bankruptcy.

These were the claims of the parties : The plaintiff claims, in his bill, that he has a title to the property which was embraced in the assignment to Mayer, superior to the claims of Mayer and of Moore, Tingue & Co., and of the sheriff; that the assignment to Mayer was made in fraud of the bankrupt act, and that the property, or its proceeds, ought to go

to the plaintiff, as assignee in bankruptcy, free and clear of the claims of all the defendants.

Mayer, in his answer, expresses his willingness to relinquish his trust in favor of the plaintiff, on being paid his disbursements for counsel fees and other expenses in administering his trust, and his commission thereunder under his levy. You could scarcely conceive of a case more like the one here and the one before us.

*Held*, that the assignment to Mayer must be held to have been invalid as against the rights of the plaintiff under the bankruptcy act, although it was an assignment in trust for creditors, without preference. Now, why was it so? The court gives the reason: It was made when Solinger was insolvent, and it had the necessary result of preventing the property from coming to any assignee in bankruptcy of Solinger who should be appointed, and of preventing such property from being distributed under the bankruptcy act in any proceedings in bankruptcy instituted against Solinger, and therefore it must be held to have been made by Solinger with such view. Mayer had reasonable cause to believe Solinger to be insolvent, and must be held to have known that Solinger made the assignment with such view, because he must be held to the knowledge that the making of the assignment would have the necessary result above mentioned. A general assignment in trust for creditors, without preference, under a state law, is void under the bankruptcy act (*Globe Ins. Co.* agt. *The Cleveland Ins. Co.*, 14 *N. B. R.*, 311).

It was further held, that "when the assignment be set aside, it becomes void from the time it was made, against all persons who, after the time it was made, took steps to acquire rights against the property embraced in it as still the property of Solinger, and who, but for the obtainment of the assignment, would have secured and enjoyed such rights free from any obstruction. Such rights arrange themselves in order according to their priorities in point of time.

"As between Moore, Tingue & Co. and Solinger, the exe-

Dolson agt. Kerr.

cution of the former bound the goods of the latter from the time the execution was placed in the hands of the sheriff. The assignee in bankruptcy acquired no rights in that respect as against Moore, Tingue & Co. which Solinger did not possess. The assignee in bankruptcy does not occupy a position of *bona fide* purchaser."

It seems to me that this case is directly decisive of the question before us. This case, as I had occasion to remark before dinner, seems to be about like this: Suppose this whole question were before the bankruptcy court, all the parties being before it, and the claim was as between these three parties, who was entitled to the property? Are the general assignees, who are the plaintiffs in this action, entitled to it by virtue of the general assignment? Is the general assignee in bankruptcy entitled to it by virtue of the assignment made in the bankruptcy court? Or is the defendant (the sheriff) entitled to it under the execution? In just precisely that case, with all those parties before the bankruptcy court, judge BLATCHFORD held that the sheriff was entitled to the property. That is this case exactly. As the action, then, cannot be maintained by you as plaintiffs for your benefit, because the bankruptcy proceedings set aside your assignment from the beginning, as you can't maintain the action in behalf of the general assignee in bankruptcy, because the recovery by Freer was without collusion with Shaffer to give him a priority, Freer is entitled to the priority which his levy gave.

I think it is better, with that express case before me, to hold in conformity with it; and if I am wrong, why, of course, it is very easy to correct me. If you wish to do so, I will put the cause in a shape where you can go to the general term without giving any security —

Mr. FIERO — I desire it put in that form. I except to your honor's ruling, and I ask to go to the jury upon the question of fraud, and then to go to the general term in the first instance; also, sixty days' time.

Dolson agt. Kerr.

The Court — Yes, sir; I repeat, if I was not against you upon the legal questions which this case involves, I should send it to the jury upon the question of fact; and whilst I should leave it to the jury to say whether there was or was not actual fraud, I should do so (where there has been one previous disagreement of the jury), with a pretty clear expression of my own judgment that there is no actual fraud in the case. As I said before, what was law under this bankruptcy act has always been very doubtful to the profession, and this decision which has recently been made, upon which I base my decision, was only made on the ninth of December last, a month and two days ago. Of course, the law was not so settled when this action was began and continued. It is due to counsel that I should make that statement.