### In re OAKLAND LUMBER CO.

(Circuit Court of Appeals, Second Circuit. December 14, 1909.)

#### No. 60.

1. BANKRUPTCY (§ 444*)—REVIEW—APPOINTMENT OF RECEIVER—RECORD.
   On a petition to review an order denying an application to vacate an order appointing a receiver of an alleged bankrupt, the Circuit Court of Appeals cannot consider as facts statements in the brief of the petitioning creditors, unsupported by the record, since, if the appeal book did not state the facts, it should have been amended on motion.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 444.*]

2. BANKRUPTCY (114*) — RECEIVERS — APPOINTMENT — "ABSOLUTELY NECESSARY."
   Bankr. Act July 1, 1898, c. 541, § 2, subd. 3, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3421), provides for the appointment of receivers by courts of bankruptcy in case the court should find it "absolutely necessary" for the preservation of the assets, etc. Held, that the words "absolutely neces-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sary," as so used, required clear, positive, and certain proof of necessity; and hence, where a bankrupt's property was in the hands of an assignee, for the benefit of creditors, and it was not claimed that it was being dissipated or improvidently cared for, or that the assignee was not careful, prudent, or responsible, an ex parte order appointing a receiver was erroneous.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164–166; Dec. Dig. § 114.*

For other definitions, see Words and Phrases, vol. 1, p. 45.]

Petition to Review Order of the District Court of the United States for the Eastern District of New York.

In the matter of the Oakland Lumber Company, an alleged bankrupt. On petition of Albert H. Tuttle to review an order of the District Court of the United States for the Eastern District of New York denying a motion to vacate an order appointing a receiver of the alleged bankrupt. Reversed.

Louis H. Strouse, for petitioner.

Thomas C. Hughes, for petitioning creditors.

Before COXE, WARD, and NOYES, Circuit Judges.

COXE, Circuit Judge. On February 16, 1909, certain alleged creditors of the Oakland Lumber Company, a domestic corporation, filed a petition alleging as an act of bankruptcy that the said company

"while insolvent and unable to pay its liabilities, made an assignment for the benefit of its creditors on the 4th day of January, 1909, to Albert H. Tuttle."

On the same day an additional petition made by Patrick F. Cradock, one of the petitioning creditors, was presented to the District Judge asking for the appointment of a receiver. This petition alleged that the assets of the Oakland Lumber Company

"amount to the sum of $25,000 and consist of stock in trade, and outstanding accounts, and that the liabilities of the said bankrupt exceed the sum of $25,000. * * * That it is necessary, in order to properly protect and preserve the assets of said alleged bankrupt, pending the adjudication upon said petition and the election and appointment of a trustee, that a receiver be appointed."

The petition further states that the alleged bankrupt has outstanding accounts and negotiable paper and orders for merchandise which should be collected and attended to. It will be observed that these papers contain no averment that the property of the lumber company was perishable or that it was being dissipated or improvidently cared for or that the assignee under the state law was not a careful, prudent and responsible person. In short there was nothing presented to the District Judge but the ordinary creditors' petition supplemented by a statement of one of the petitioners that, in his judgment, a receiver was necessary.

On these papers and without notice to the bankrupt or the assignee, a receiver was appointed and the bankrupt was directed forthwith to deliver to the receiver all its property in its possession or under its control.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On the 18th of February the alleged bankrupt moved to vacate the order appointing the receiver. Argument was heard on this motion February 26th and on the 18th of March, 1909, it was denied. On the 3d of March the Lumber Company filed an answer denying all the material allegations and demanded a jury trial of the issues thus raised.

The questions here presented must be determined upon the facts as they appear in the record.

Manifestly we are not at liberty to consider as facts, statements made in the brief of the petitioning creditors which are unsupported by the record. If the appeal book did not state the facts a motion should have been made to amend it.

The question, broadly stated, is this—Should the court have vacated the ex parte order appointing the receiver?

At the time this motion was made the questions presented by the creditors' petition and the bankrupt's answer were undetermined and, so far as this record discloses, there was nothing to indicate that the assignee under the state law was not an honest, capable and responsible man in whose hands the property was entirely safe.

The direct grant of authority for the appointment of receivers is found in section 2, subd. 3, of the act (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]), and is as follows: Courts of bankruptcy are invested with jurisdiction to

"appoint receivers or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary, for the preservation of the estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified."

The power to take from a man his property, without giving him an opportunity to be heard, is both arbitrary and drastic and should not be exercised except in the clearest cases. Congress recognized the necessity for caution by limiting the appointment of receivers to cases where it is "absolutely necessary" for the preservation of the estate. In other words the reason for such an interference with the rights of property must be clear, positive and certain. Of course cases frequently arise where this remedy may be necessary—cases where there is reason to believe that the property may be stolen or secreted or turned over to favored creditors. But fraud cannot be presumed, neither can danger to the property be predicated of acts which are honest and lawful. It cannot be presumed that an assignee under a state law intends to plunder the fund he is appointed to administer. Unless something be shown to the contrary the presumption is persuasive that during the interval between the filing of the petition and the appointment of a trustee, the property will be entirely safe in the hands of the assignee especially if he be enjoined from disposing of it pendente lite. We are informed that it has grown into a well established custom for the attorney for the petitioning creditors, when he files his petition, to apply at the same time for the appointment of a receiver and that the application is usually granted. If such a practice exists we see nothing in the law to warrant it. It seems to us that the rule which obtains in all other jurisdictions where receivers are appointed is equally applicable to courts of bankruptcy and that in no case should a remedy so

far reaching in its effects be resorted to except upon clear and convincing proof. Cases have not infrequently come within the observation of the court where after a receiver was appointed the petitioning creditors were unable to establish their own status or to prove an act of bankruptcy and the petition was dismissed, leaving the court with a receiver on its hands with no proceeding in esse and no funds with which to pay him and the expenses incurred by him. Again the appointment of a receiver creates an additional official to be paid from the estate.

Nothing contributed so much to bring about the repeal of the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 567) as the large expense of administration, the small estates being entirely absorbed in fees. The more economical the administration of the present act the longer will it continue as an important adjunct to trade and commerce.

All these reasons combine in requiring that the power to appoint receivers should be exercised not as a matter of course but cautiously, circumspectly and always upon proof that the appointment is "absolutely necessary."

The question here presented was, upon facts substantially identical, decided by this court in Re Spalding, in May, 1905. As the opinion was delivered orally and has not been reported, we quote it at length:

"The fundamental error in the argument for the receiver and of the learned court below seems to be that both regard it as proper that a receiver should be appointed, practically as a matter of course, in every case where a petition in bankruptcy is filed. That is not the law and it is not good sense.

"The court has jurisdiction under the statute to appoint receivers only when it shall find it absolutely necessary for the preservation of estates. The petition upon which this receivership was granted not only fails to show that it was absolutely necessary, but shows affirmatively that it was absolutely unnecessary, as it shows the property to have been in the custody of a receiver appointed by the Supreme Court of the state of New York, and there is nothing in the record to show that the state court receiver is not an entirely proper and competent person to preserve the assets. What could the federal receiver do under such circumstances? He has not title to any property. He is a mere custodian. He could not take the assets from the state court receiver. The bankruptcy court could not make any such order and the assets could only be taken from the state court receiver by an application in the state court itself.

"Furthermore, this appointment of receivers as of course is a great injustice to the bankrupt in the event that the petition is not followed by adjudication. And it is wasteful and an unnecessary expense to the estate in the event that there is an adjudication.

"The papers on this application are wholly inadequate. The order is reversed with instructions to vacate the receivership."

To the same effect are In re Rosenthal (D. C.) 144 Fed. 548; Collier on Bankruptcy (7th Ed.) 29; Beach on Receivers, § 134, 140–142; Am. & Eng. Enc. of Law, vol. 23, 1011.

The order of the District Court is reversed with costs.