### In re STANDARD CORDAGE CO.

#### (District Court, S. D. New York. May 20, 1910.)

#### No. 13,598.

1. BANKRUPTCY (§ 114*)—RECEIVERS—APPOINTMENT—ORDER—DISSOLUTION—NOTICE.

Where all the parties in interest are before the court, an order appointing a receiver in bankruptcy would not be vacated because no notice had been given the bankrupt of the application.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

2. BANKRUPTCY (§ 114*)—RECEIVERS—APPLICATION TO APPOINT—PROOF.

On an application for the appointment of a receiver for an alleged bankrupt, it must appear affirmatively that the bankrupt's assets are likely to be dissipated or wasted pending the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

3. BANKRUPTCY (§ 114*)—RECEIVERS—ACCOUNT.

An alleged bankrupt corporation, owing to pecuniary losses of its predecessor, impairing its credit from the beginning, decided in 1907 to discontinue business. In 1909 application was made to the state court for a voluntary dissolution of the corporation, and for leave to divide its assets among its creditors and stockholders, but it had not abandoned its business, and was still selling its products in the customary way, though its plant and factories had been shut down to save cost and running expenses. It also appeared that the bondholders and petitioning creditors approved the course of the directors to dissolve the corporation in 1907, and it was not clear that there had been any serious waste of funds or mismanagement. *Held* insufficient to justify the appointment of a receiver.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

4. BANKRUPTCY (§ 20*) — DISSOLUTION OF CORPORATION — JURISDICTION OF STATE COURT—STATE LAWS.

The bankruptcy law does not suspend the jurisdiction of a state court over a corporation desiring to dissolve and discontinue operation; and hence the insolvency of a corporation does not necessitate the suspension of proceedings in the state court, or its dissolution, though, if the company is insolvent and has committed an act of bankruptcy, its property may be distributed among its creditors in accordance with the bankruptcy act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 20.*]

In the matter of bankruptcy proceedings of the Standard Cordage Company. Motion to vacate an ex parte order appointing a receiver, and to dismiss a petition in involuntary bankruptcy. Application to vacate appointment of receiver allowed, and application to dismiss denied.

Alfred S. Brown, for Standard Cordage Co.

Charles A. Decker, for first-mortgage bondholders and Standard Cordage Co.

H. E. Lippincott, for committee of adjustment mortgage bondholders.

Henry Wollman, Achilles H. Kohn, Irving M. Dittenhoefer, and Benjamin F. Wollman, for petitioning creditors and other adjustment bondholders.

Abram I. Elkus and James N. Rosenberg, for receiver.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HAZEL, District Judge. This is a motion to vacate an ex parte order appointing a receiver of the assets and property of the Standard Cordage Company, and also to dismiss the petition in involuntary bankruptcy, on the ground that no act of bankruptcy is therein alleged. In disposing of the motion, it will only be necessary to inquire whether under section 2, subd. 3, Bankr. Act July 1, 1898, c. 541, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3421), the appointment of a temporary receiver is absolutely necessary for the preservation of the bankrupt estate. There was no notice given the bankrupt of the application for the appointment of a receiver, but, as all the interested parties are before me, I would not vacate the receivership for failure to give such notice, if the facts were sufficient to indicate the absolute necessity of the appointment. Looking at the facts as they are now presented, the primal question for consideration is not simply whether it would be better for all parties concerned that the receivership should be continued, but whether such continuance is absolutely essential to protect and conserve the property of the company. The record does not present such a situation. It appears by the papers that the petitioning creditors are holders of adjustment bonds maturing at the end of 25 years, such bonds being secured by a second mortgage upon the real property of the bankrupt, and that the first mortgage covers the same property. There are no unsecured creditors. The first mortgage secures an issue of 25-year bonds amounting to $2,806,000. Interest on the bonds is payable semiannually, and the mortgage, which covers plant, real estate, patents, and franchises, contains a provision that, after a default in the payment of interest, the trustee may either enter upon the premises, taking possession thereof, or institute foreclosure proceedings. It is shown that the credit of the company was impaired from the beginning, owing to the pecuniary losses of its predecessor, and that in the year 1907 the directors, realizing that the income was diminishing from year to year, decided to discontinue the business. In 1909, after some indecision on their part, it was decided to discontinue business and apply to the Supreme Court of the state of New York, under chapter 28 of the general corporation laws (Consol. Laws, c. 23), for a voluntary dissolution of the corporation, and leave to divide the assets among the creditors and bondholders. Such application to wind up the affairs of the company, however, was not made until March 16, 1910. Just prior thereto, the directors paid $70,150 interest, which was due and unpaid on the first mortgage bonds. Such payment, together with the payment of an item for past-due rent of premises, is now claimed by the petitioning creditors to be an act of bankruptcy. The bankrupt however contends that such payments were not intentional preferences, but were necessarily made to preserve the estate and prevent foreclosure of the first mortgage and ejectment for nonpayment of rent. Upon this motion it is not necessary to decide the question whether or not an act of bankruptcy has been committed by the company. That question may safely be left for later determination.

While it is true that a court of bankruptcy will not yield its functions and powers to a state court, or permit a bankrupt corporation

which applies to a state court to wind up its affairs to defeat the operation of the bankruptcy law, yet, on an application for the appointment of a receiver in the bankruptcy court, it must appear affirmatively that the assets of the bankrupt are likely to be dissipated or wasted pending the adjudication. The property of a bankrupt should not be taken out of his control before adjudication, unless it clearly appears either that the property is perishable or that it is apt to become wasted, despoiled, or misappropriated by him or those who have it in their custody or control. In the present case we have a corporation which has not actually abandoned its business. It is still engaged in selling its product in the customary way, although its plants and factories have been shut down to save cost and expense of running. True, the petition alleges that the bankrupt gave unlawful preferences, and that the directors mismanaged the affairs of the corporation. I am not satisfied on this point. On considering the affidavits of the bankrupt, I do not believe that there has been such waste of the funds or mismanagement of the corporation as to justify the court in retaining charge of the property by its receiver. The failure of the board of directors to dissolve the corporation in 1907, as it had determined to do, and keeping on at increasing loss, paying high salaries, paying interest on first mortgage bonds, selling below cost, buying large and unnecessary quantities of hemp, etc., were acts not free from unfavorable criticism. But it now appears by the moving affidavits that in such acts the bondholders and the petitioning creditors acquiesced or stood by, approving the course of the directors and officers of the corporation. It seems to me that the principle recently enunciated by the Circuit Court of Appeals for this district in Re Oakland Lumber Company, 174 Fed. 634, 98 C. C. A. 388, may fittingly be applied to the case at bar. Judge Coxe, speaking for the court, said:

"The power to take from a man his property, without giving him an opportunity to be heard, is both arbitrary and drastic, and should not be exercised except in the clearest cases. Congress recognized the necessity for caution by limiting the appointment of receivers to cases where it is 'absolutely necessary' for the preservation of the estate. In other words, the reason for such an interference with the rights of property must be clear, positive, and certain. Of course, cases frequently arise where this remedy may be necessary—cases where there is reason to believe that the property may be stolen or secreted or turned over to favored creditors. But fraud cannot be presumed, neither can danger to the property be predicated of acts which are honest and lawful."

In that case, it is true the property had been assigned and was in the custody of the assignee, but in my opinion it makes no difference, in the absence of a clear showing of fraud, spoliation, or mismanagement, that the property and management of the business prior to adjudication remains under control of the board of directors. As already stated, the corporation, claiming to be solvent though admitting its financial inability to continue its business operations, wishes to wind up its affairs and distribute its assets under the consolidated laws of the state of New York. This it had a legal right to do. The bankruptcy law does not suspend the jurisdiction of the state court over a corporation desiring to dissolve and discontinue its operations

(In re Watts, 190 U. S. 11, 23 Sup. Ct. 718, 47 L. Ed. 933), and I think the proceeding for dissolution in the state court, in view of the circumstances, was not improper, and should be permitted to continue. Of course, if the company is insolvent, as that term is defined in the bankruptcy act, and has committed an act of bankruptcy, its property must be distributed among its creditors in accordance with the provisions of the bankrupt law, and it will not be permitted to evade the operation of such law by dissolution proceedings in the state court. But as it is not shown that a receiver herein is absolutely necessary to protect the property of the bankrupt, as that term is explained in the Oakland Case, the appointment of a receiver herein must be vacated. Under the state statute authorizing dissolution proceedings, any additional payment of interest on the first mortgage bonds or sale, transfer, or conveyance of property by the company is absolutely void, and such statutory provision therefor is thought to adequately safeguard the rights of the petitioning bondholders. Nevertheless, I think the order vacating the receivership may contain a provision enjoining the further payment of principal or interest on the first mortgage bonds pending the adjudication, and also the distribution to the creditors or bondholders of the assets of the corporation or any fund realized out of the sale of its real or personal property by order of the state court in the dissolution proceedings, to the end that, if an adjudication in bankruptcy is had, such fund, assets, and property may be distributed under the provisions of the bankruptcy act.

The application made by the bankrupt to vacate the appointment of a receiver on May 3, 1910, is granted, and the application for dismissal of the petition to have the company adjudicated bankrupt is denied.