### INGRAM et al. v. INGRAM DART LIGHTERAGE CO.

(District Court, S. D. Georgia, E. D. May, 1915.)

BANKRUPTCY ⬤114—RECEIVERS—GROUNDS FOR APPOINTMENT.

The ex parte appointment of a receiver for the property of an alleged bankrupt, under Bankr. Act July 1, 1898, c. 541, § 2 (3), 30 Stat. 545 (Comp. St. 1913, § 9586), which authorizes such appointment only when "absolutely necessary for the preservation of the estate," is erroneous, where the property is in possession of a state receiver previously appointed, and it is not shown that he is not properly caring for it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164–166; Dec. Dig. ⬤114.]

In Bankruptcy. In the matter of the Ingram Dart Lighterage Company, alleged bankrupt. On motion to vacate receivership. Motion sustained.

Max Isaac and D. W. Krauss, both of Brunswick, Ga., for the motion.

A. D. Gale, of Brunswick, Ga., opposed.

SPEER, District Judge. In an involuntary bankruptcy proceeding, brought by W. H. Ingram and others against the Ingram Dart Lighterage Company, filed March 20, 1915, the petitioning creditors sought the appointment of a receiver to take charge of the assets of the alleged bankrupt. This petition was filed on the 26th of March, 1915. It contained the usual allegations as to the necessity of such appointment and was presented to Hon. A. J. Crovatt, referee in bankruptcy. After an ex parte hearing, the referee appointed R. B. McCullough, Esq., receiver of the property of the alleged bankrupt, and directed him to apply to the state court, which had previously taken possession of the assets by order passed upon a creditors' bill pending in that court. Subsequently Wright & Gowen Company, Georgia Hardware Company, Coney & Parker Company, and George Lyons & Co., and certain other creditors presented this their petition to vacate the order made by the referee. They alleged that the receiver of the bankruptcy court was unnecessarily appointed, without notice to any of the parties at interest.

The corporation alleged to be bankrupt was engaged in navigation. All the officers and directors it seems were drowned at the time when one of its tugs was wrecked. The property consists of certain machinery salved from the wreck and certain lighters. The corporation is indeed unrepresented, unless the contending receivers are its legal representatives. We do not presume to question the propriety of the order made by the state court in appointing its receiver. It will suffice to point out that the appointment and its possession antedated that made by the referee. The state court receiver was ignored by the referee when he appointed the receiver of the bankruptcy court, and had no notice of the proceeding here. No averments which pointed out serious danger to the assets were set forth in the petition presented to the referee. An illuminative precedent is the opinion of the Circuit Court of Appeals for the Second Circuit, in Re Oakland Lumber Company, 23 Am. Bankr. Rep. 181, 174 Fed. 634, 98 C. C. A. 388. The paragraph of the syllabus is as follows:

"Bankr. Act July 1, 1898, * * * provides for the appointment of receivers by courts of bankruptcy in case the court should find it 'absolutely necessary' for the preservation of the assets, etc. *Held*, that the words 'absolutely necessary,' as so used, required clear, positive, and certain proof of necessity; and hence, where a bankrupt's property was in the hands of an assignee for the benefit of creditors, and it was not claimed that it was being dissipated or improvidently cared for, or that the assignee was not careful, prudent, or responsible, an ex parte order appointing a receiver was erroneous."

Now the receiver of the state court in Georgia, backed by judicial authority, is surely as strongly fortified as the assignee under the

New York law. The state and federal courts of concurrent jurisdiction should avoid conflict wherever possible, and should be guided always by the most courteous principles of comity. There are occasions, of course, where the national law, inherently superior, indeed, supreme in effect, must control; but to quote from the learned opinion of Judge Coxe for the court, in the case cited:

"Congress recognizing the necessity for caution by limiting the appointment of receivers to cases where it is 'absolutely necessary' for the preservation of the estate. In other words, the reason for such interference with such rights of property must be clear, positive and certain. Of course, cases frequently arise where this remedy may be necessary—cases where there is reason to believe that the property may be stolen or secreted, or turned over to favored creditors." (This language of the learned New York jurist would be never, or at least hardly ever, appropriate in this state.)

He continues:

"But fraud cannot be presumed, neither can danger to property be predicated of acts which are honest and lawful. It cannot be presumed that an assignee under a state law intends to plunder the fund he is appointed to administer. Unless something be shown to the contrary, the presumption is persuasive that during the interval between the filing of the petition and the appointment of a trustee the property will be entirely safe in the hands of the assignee."

It is difficult to perceive how the fragmentary and perhaps corroding machinery, which has been rescued from the waves, or the lighters, which were less unfortunate, could be better handled by the receiver of the bankruptcy court than by the receiver of the state court. There may be a personal equation latent in the problem before the court; but, since it is latent, it is incapable of solution.

We are therefore reluctantly constrained to differ with the learned referee, and to direct a decree vacating the receivership he created.