## In re FEDERAL MAIL & EXPRESS CO.

(District Court, S. D. New York. June 26, 1916.)

1. BANKRUPTCY ☞114(1)—RECEIVER—APPOINTMENT—POWER OF COURT.

A receiver is an arm of the court, and a bankruptcy court, after petition is filed, has jurisdiction to appoint a receiver, though such appointment should not be made in the absence of special controlling circumstances.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164, 165; Dec. Dig. ☞114(1).]

2. BANKRUPTCY ☞114(1)—RECEIVERS—APPOINTMENT—ASSIGNMENT.

Where an insolvent made a general assignment, and the assignee, who was a chattel mortgagee entitled on default to take possession of part of the insolvent's property, went into possession, the bankruptcy court will, upon the filing of a petition against the insolvent, appoint a federal receiver to conserve the insolvent's property, for to allow the estate to be administered by an assignee selected by the bankrupt would be to the prejudice of creditors, particularly as the assignee, however upright, was interested adversely to general creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164, 165; Dec. Dig. ☞114(1).]

3. BANKRUPTCY ☞60—ACT OF BANKRUPTCY—ASSIGNMENT.

A general assignment by an insolvent is an act of bankruptcy, and will support an adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. ☞60.]

In Bankruptcy. In the matter of the bankruptcy of the Federal Mail & Express Company. Receiver appointed.

A motion is made for the appointment of a receiver. On June 13, 1916, a general assignment for the benefit of creditors was made to Louis Stern, who was in the business of hay, feed, and grain, followed shortly by an involuntary petition in bankruptcy filed on the 15th day of June, 1916. Stern held a chattel mortgage on property of the alleged bankrupt executed by it on June 15, 1915, to secure the payment of $4,633.10, as evidenced by 12 notes, payable in installments of $200 each. The usual printed form of chattel mortgage used in this city contained a provision permitting the mortgagee, in case of default, to enter the store of the alleged bankrupt and "take and carry away the said goods or chattels, and to sell and dispose of the same at public or private sale, * * * and out of the money arising therefrom retain and pay the said sums above mentioned and all charges touching the same, including counsel fees." Two subsequent chattel mortgages were made to

Louis Ober, one dated January 17, 1916, and filed February 28, 1916, to secure the payment of $3,000, and a further mortgage for the sum of $300, dated May 9, 1916, covering fixtures and all paraphernalia which were not covered by the other mortgages. Within four months Stern has received payments from time to time on account of the mortgage debt aggregating upwards of $1,000. On the 3d of June Stern was paid about $400 for hay and feed delivered the prior month.

Rudolph Marks, of New York City, for petitioning creditors.
Harry L. Ettinger, of New York City, for assignee.
Harry A. Goidel, of New York City, for alleged bankrupt.
James N. Rosenberg, amicus curiæ.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). [1-3] In this case I have discovered nothing which indicates a fraudulent assignment, but it well illustrates the unsatisfactory nature of administration of estates of insolvents through general assignments, which has increased rapidly in this district during the past year. The ordinary method of proceeding is for the bankrupt to choose his assignee, who is frequently some one connected with him by business or family ties, and thus in a measure to control the administration of his estate until the creditors have elected a trustee. In fraudulent cases this method of administration affords the greatest facility for concealment of assets. A person chosen by the bankrupt, even if honest, is not as likely to be as zealous in uncovering wrongful acts of the bankrupt as a stranger chosen by the court, or at the instance of creditors. The method which has been sought for the administration of these bankrupt estates is, first, to have some friendly creditor file a petition in involuntary bankruptcy, and thereafter, on the one hand, to administer the estate under the control of the assignee as the latter may please, and, on the other, to seek the aid of the bankruptcy court to restrain landlords from summary proceedings, to secure examinations under section 21a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. 1913, § 9606]), and in general to stay any action by the creditors which the bankrupt may find inconvenient. This method, if successful, enables the bankrupt to have his estate administered by a person of his choice, who in many cases conducts his sales under orders of the state court, and practically winds up the estate before a trustee is elected, and thus uses the bankruptcy court purely as a forum where the bankrupt can obtain a discharge from his debts more readily than would be possible under the state insolvency law, where the consent of two-thirds of the creditors is required. This method of administration involves constant problems as to jurisdiction of the respective courts, and in the end secures what many bankrupts desire, the benefits of both the state insolvency law (2 Rev. St. pt. 2, c. 5, tit. 1, art. 8) and the national bankruptcy law, and for the creditors the safeguards of neither.

In the present case I am making no personal criticism of either the assignee, or the bankrupt, or his counsel, but adverting solely to what has become, in my opinion, a most undesirable practice in this community. It must be obvious to any one, and it is certainly becoming evident to any judge of this court, that it is not desirable for a bank-

rupt to have the choice of the man who is to administer his estate. Heretofore we have hesitated to appoint receivers, except in cases of plainly fraudulent assignments, owing to the supposed doctrine of In re Oakland Lumber Company, 174 Fed. 634, 98 C. C. A. 388. In that case a receiver was appointed without notice, and without any proof before the court that the property of the lumber company was perishable, or that it was being dissipated or improvidently cared for, or that the assignee was not a careful, prudent, or responsible person. The court went upon the ground that the appointment of a receiver without notice should only be made in the clearest case, and cited the case of In re Spaulding (not reported), where an oral opinion was delivered that is followed in the Oakland Lumber Company decision. That was a proceeding where a receiver had been appointed in the state court, who had the custody of the property. Far different considerations ordinarily apply in such a case. A receiver appointed by the state court is in every sense the official arm of that court, and while this court, sitting in bankruptcy, has in my opinion exclusive jurisdiction, after a petition has been filed, to control the custody of the property, there can be no reason ordinarily for adding to the expenses by appointing a federal receiver, and such appointment should not, in the absence of special controlling circumstances, be made. That receiver is the choice of a court acting independently of the insolvent, and not of the insolvent himself. It was said in the Oakland Lumber Company Case:

"But fraud cannot be presumed, neither can danger to the property be predicated, of acts which are honest and lawful. It cannot be presumed that an assignee under a state law intends to plunder the fund he is appointed to administer. Unless something be shown to the contrary, the presumption is persuasive that during the interval between the filing of the petition and the appointment of a trustee the property will be entirely safe in the hands of the assignee, especially if he be enjoined from disposing of it pendente lite."

In other words, the objection of the Circuit Court of Appeals was not a jurisdictional one, but was made to the appointment of a receiver in the particular case in question. It is often said that there is no reason for supposing that the state court will not require as much fidelity from its officers as this court, and I do not for an instant suppose that it will not. The question is, not what the state court requires of the assignee upon his accounting, but what is the inevitable result of the administration of the estates of people who are subjected to all kinds of temptations growing out of financial embarrassment by persons of their own choice. I am satisfied that it would be the better practice in the future to restrain assignees from administering the estate, and in any case where it appears that the assignee represents an interest hostile to that of the general creditors, or is for other reasons an undesirable person to have the custody of the property, to appoint a receiver.

That my interpretation of the Oakland Lumber Company Case is correct seems to me apparent from an examination of the opinion of Judge Brown in the case of In re Gutwillig (D. C.) 90 Fed. 475, and that of Judge Wallace in the same case on appeal, reported in 92 Fed. 337, 34 C. C. A. 377. It is to be noted that the Gutwillig Case was not even referred to in the Oakland Lumber Company Case, and that the

latter, therefore, must have proceeded upon the ground that the circumstances of that case did not call for the appointment of a receiver, rather than upon lack of power. The Gutwillig Case was not a case where a receiver was appointed, but one where a motion was made to restrain an assignee's sale. Judge Addison Brown discussed the whole subject with his usual discrimination, and said:

"Our bankrupt acts have been largely modeled upon the English statutes of bankruptcy. Many of their phrases are transferred literally to our own acts, and these phrases are presumably used by Congress in the sense in which they have been previously interpreted in the English law. Since the time of George II, and even prior, the current of English adjudications, followed by our own, has been that a voluntary assignment of all his property by an insolvent debtor to an assignee of his own choosing, though without preferences, is itself an act of bankruptcy, a fraud upon the act, and hence a fraud upon creditors as respects their rights in bankruptcy, and voidable at the trustee's option, even without any express provision to that effect in the statute. These principles, and the long line of authorities in support of them, from the time of Lord Mansfield, have been clearly set forth in the elaborate review of the subject by Judge Cadwalader in Barnes v. Rattew [Rettew] 8 Phila. 133, 2 Fed. Cas. 868, and by Judge Emmons in Globe Ins. Co. v. Cleveland Ins. Co., 14 N. B. R. 311, 10 Fed. Cas. 488, and need not be repeated here. The same views were adopted and reinforced by Judge Johnson on appeal in the case of In re Biesenthal [Beisenthal] 15 N. B. R. 228, 3 Fed. Cas. 76, which settled the law in this circuit under the act of 1867. The general ground upon which all these cases, in the absence of express statutory enactments, have proceeded, is that a voluntary assignment is in effect an act of bankruptcy, and is 'fraudulent, not at common law, or under 13 Eliz., but because it defeats the rights of creditors secured by the bankrupt law to the choice of a trustee, to the summary jurisdiction of the bankruptcy court, and to the ample control which the law intended to give them over the estate of their insolvent debtor,' and is therefore a fraud upon the act and upon creditors' rights, which prevents the assignee from holding the assigned estate as against the trustee in bankruptcy. These general principles and the decisions enforcing them are as applicable to the present act as to the various English bankruptcy statutes and to our own acts of 1867, 1841, and 1800. They are not founded upon any special phrases in the bankruptcy statutes, but upon the general scope, purpose, and policy of bankruptcy laws, and the resulting rights of creditors. * * *

"The provision of the present act making a voluntary assignment ipso facto an act of bankruptcy in accordance with the original doctrine, could not have been intended as a mere vain and empty declaration, of no value to creditors. These words, on the contrary, can mean no less in the statute than they meant in prior decisions, viz., that both the bankrupt and the estate sought to be assigned in fraud of the act become thereby instanter subject to the operation of the bankrupt law. Upon such an assignment, creditors are authorized to proceed instanter against the debtor as under the old law. Careful provisions are made in the present statute for these involuntary features and for preserving this right of procedure; and if, notwithstanding these provisions, a voluntary assignment could stand valid as against the trustee in bankruptcy afterwards appointed, the whole object of declaring such an assignment to be an act of bankruptcy would be nullified. In that case, though the creditors invoking this express provision might immediately put the debtor into bankruptcy, they would thereby gain no control of any assets nor derive the least benefit from the bankruptcy proceeding; and while thus subjecting themselves to expense in the pursuit of their illusory rights, the only result would be to benefit the bankrupt by giving him a discharge for nothing. This cannot be the intent of the law. On this point Johnson, J., in the Case of Biesenthal [Beisenthal], above cited, observes: 'To permit the administration of the assets of an insolvent and bankrupt debtor to be committed to a trustee of his choice, and then to reduce the bankrupt law to a mere process of dis-

charging a debtor from his debts. is quite inconsistent with any fair view of the purpose of this legislation.'"

After these and other observations, Judge Brown, after granting a restraining order forbidding the assignee to dispose of the assigned property, or the proceeds, until the adjudication, said that a voluntary assignment "is voidable by the trustee and that the assets should be brought into the bankruptcy court." Upon the appeal, Judge Wallace, writing for the Circuit Court of Appeals, said:

"The general purpose of bankrupt laws, and of the present act, is not only to administer the assets of insolvent debtors on the basis of equality, but to secure that result by giving to the creditors, and not to the debtor, the se-lection of the person to be intrusted with the administration. To permit the administration to be committed by an insolvent debtor, who is on the heels of an adjudication of bankruptcy, to a trustee selected by himself, and thus be wholly withdrawn from the supervision of the bankrupt court, is irreconcil-able with any reasonable view of the purpose of such legislation. Hence it has been almost uniformly adjudged that any disposition of his property by a debtor intended to accomplish that purpose is a fraud upon the creditors, who have a right to invoke its protection. That such disposition is not one which is fraudulent at common law is immaterial. It suffices if its necessary effect is to defraud, hinder, or delay creditors in their rights and remedies under the bankrupt law."

The opinion by Judge Brown in the case of In re Gutwillig was ap-proved by the Supreme Court in the case of West Company v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098, in an opinion by Mr. Justice (now Chief Justice) White, in which he said:

"Now, when it is considered that the present law, although it only retained some of the provisions of the act of 1867, contains an express declaration that a deed of general assignment shall authorize the involuntary bankruptcy of the debtor making such a deed, all doubt as to the scope and intent of the law is removed. The conclusive result of a deed of general assignment under all our previous bankruptcy acts, as well as under the English bankrupt laws, and the significant import of the incorporation of the previous rule, by an express statement, in the present statute have been lucidly expounded by Ad-dison Brown, J., in Re Gutwillig (D. C.) 90 Fed. 475, 478. * * * Our con-clusion, then, is that, as a deed of general assignment for the benefit of cred-itors is made by the bankruptcy act alone sufficient to justify an adjudication in involuntary bankruptcy against the debtor making such deed, without ref-erence to his solvency at the time of the filing of the petition, the denial of insolvency by way of defense to a petition based upon the making of a deed of general assignment is not warranted by the bankruptcy law."

In the case of Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, a general assignment was followed in nine days by a petition in bankruptcy. Between the filing of the petition and the date of adjudication the assignee sold the property of the estate. The court held that the purchaser had a title subordinate to that of the bank-rupt's estate, and that the equities between him and the creditors should be determined by the District Court.

Mr. Justice Holmes, in the case of Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165, held that the rights of an as-signee to compensation and recoupment did not depend upon the state law, or arise out of the assignment, but are based upon an equitable right to claim such recoupment and compensation as may be reasona-ble for his efforts in preserving the estate, which should be fixed by the

bankruptcy court. In the case of In re Watts and Sachs, Petitioners, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933, the Chief Justice said:

"The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive."

Under the foregoing decisions it is apparent that a general assignment is an act of bankruptcy to which there can be no possible defense. If it is followed by a petition in bankruptcy, this court obtains exclusive jurisdiction, entirely irrespective of the question of solvency or insolvency. The only possible defense that a bankrupt or assignee could have to a petition in bankruptcy alleging the making of a general assignment within the statutory period would be a denial of that fact. The only question that I think arises, if it clearly appears that a general assignment has been made, is whether the assignee is a proper custodian of the property during the period between the filing of the petition and the election of a trustee. As to this matter there should be an investigation, but I have not the slightest doubt that the ordinary power in this court to appoint a receiver is not affected by the fact that an assignment for the benefit of creditors has been executed and that the assignee named therein has qualified. Whether to appoint a receiver in the given case is a matter for the exercise of a proper discretion. I am further of the opinion that in all cases where a petition in bankruptcy has been filed, after the making of a general assignment, this court has both the power and the absolute discretion to restrain the assignee from administering the estate.

In respect to the case under consideration, I was of the opinion that a mortgagee, who had powers of sale under the terms of his chattel mortgage and had apparently received preferential payments within four months, was not a proper person to administer the estate of the bankrupt prior to the election of a trustee. It was plain, as the business was an express business and the property consisted of numerous horses and vans, that a person should be chosen who could actively manage the business. It also seemed to me that a person who was given power under the terms of his mortgage to take possession of the assets and sell on account of his mortgage was a person who, however honest or capable, had an adverse interest to general creditors. I therefore stated that I would appoint a receiver and stay the assignee. Under the circumstances, the assignee said that he preferred to resign. He did so resign, and I thereupon appointed a receiver, with power to conduct the business.

By reason of the fact that the considerations involved in this case may affect cases in bankruptcy in an important way, I have set forth my reasoning and conclusions at some length. I may add that I shall be inclined to grant stays against assignees in the case of future assignments, unless the creditors should as a body desire otherwise.