In re D. & E. DRESS CO., Inc.

(District Court, S. D. New York. June 26, 1916.)

BANKRUPTCY ☜20(1)—GENERAL ASSIGNMENT FOLLOWED BY PETITION—EX-
CLUSIVE JURISDICTION OF DISTRICT COURT.

Where a general assignment for the benefit of creditors is followed by
an involuntary petition in bankruptcy against the assignor, the federal
District Court in bankruptcy obtains exclusive jurisdiction, and has pow-
er to remove the assignee, irrespective of his good faith and standing,
and to appoint a receiver, if such course will be a better assurance of a
satisfactory administration.

In Bankruptcy. In the matter of the D. & E. Dress Company, In-
corporated, alleged bankrupt. On motion to remove an assignee for
the benefit of creditors and to appoint a receiver in the bankruptcy
proceeding. Motion granted.

James N. Rosenberg and Maurice Shaine, both of New York City,
for the motion.

Louis H. Strouse and Rudolph Marks, both of New York City, op-
posed.

MAYER, District Judge. This is a motion to remove an assignee
for the benefit of creditors and appoint a receiver in the bankruptcy
proceeding. The assignee is a reputable member of the bar and ex-
perienced in the practice of the bankruptcy law, and there is not the
slightest suggestion in the moving papers that the assignee is other than
an upright and capable practitioner. The motion is brought essen-
tially to invoke a decision from this court, in view of the constantly
increasing practice of making general assignments for the benefit of
creditors. This practice is condemned by many reputable merchants,
and I annex to this opinion communications from the Merchants' As-
sociation and the Merchants' Protective Association, and I am satis-
fied that other well-recognized trade associations entertain, from the
practical standpoint, the same views as are expressed in these two
communications.

It is desirable not to temporize with a situation of this kind, and
therefore I am glad that this case presents a state of facts, where the
court is called upon to place its decision upon broad grounds. There
are some incidental questions, which are not waived; but these I need
not consider, in view of the ground upon which my decision will rest.

On June 19, 1916, the assignee was requested by the attorney for
the bankrupt to serve as assignee for the benefit of creditors under a
general assignment. At that time the assignee had met the attorney
for the bankrupt for the first time, and this request came from the
attorney for the bankrupt presumably largely because of the experience
of the assignee in matters relating to general assignments in bank-
ruptcy. The assignee having consented, the general assignment was
made to him. Thereafter a petition in involuntary bankruptcy was
filed. This petition was not a so-called friendly petition, but was a
hostile petition, filed at the instance of creditors who presumably
preferred to see this administration conducted under the federal stat-

ute rather than the state statute. The motion for the appointment of a receiver was made by an independent creditor, in the sense of a creditor not one of the three petitioning creditors.

We have thus a case where no suspicion can arise because of previous relations between the parties, where the assignee was not in any manner theretofore connected either with the assignor or his attorney, and where there has not been any doubtful act relating to the making of the general assignment, but where creditors desire that the administration from start to finish shall be conducted in accordance with the practice and rules of this court and under the supervision incident thereto.

Judge Augustus N. Hand, in Matter of Federal Mail & Express Co. (D. C.) 233 Fed. 691 (which will probably be filed contemporaneously herewith), has carefully analyzed and considered the Oakland Lumber Company Case, 174 Fed. 634, 98 C. C. A. 388, which, in the opinion of many members of the bar, has stood in the way of this court acting to remove assignees. I agree with Judge Augustus N. Hand that, if a general assignment is followed by a petition in bankruptcy, this court obtains exclusive jurisdiction.

I am satisfied that, in view of the Gutwillig Case (D. C.) 90 Fed. 475, and 92 Fed. 337, 34 C. C. A. 377, and the expression in In re Watts & Sachs, Petitioner, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933, and the purpose, intent, and structure of the Bankruptcy Act, this court has power to remove an assignee under a general assignment, entirely irrespective of the personnel of the assignee, and has power to appoint a receiver, if, in its opinion, such course will be a better assurance of a satisfactory administration.

In addition to what is set forth in Judge A. N. Hand's opinion, there are many practical reasons which are entitled to strong consideration. In this jurisdiction the prompt and efficient action of a receiver often results, not merely in affirmative benefit to the estate, but in preventing fraudulent and criminal acts, such as the removal or concealment of assets. In my own experience I recall a number of such instances. Where an assignee is selected by the assignor, it is but natural that the creditors should not have the same confidence in the administration of the estate as they would have if the administrator were either an independent appointee of the court, or some one appointed as the result of a practically unanimous recommendation of reliable creditors.

In the case at bar it is asserted that the alleged bankrupt made a written statement in July, 1915, to a commercial agency, in which it claimed to have total assets of $30,400, to owe only $12,900, and to have a net worth of $17,594. The present condition of the bankrupt's assets is such that within one year its entire surplus has been wiped out, and thus the case is one which, according to the face of the allegations, requires serious inquiry.

An exceedingly annoying practice has developed by which, after the making of the general assignment, this court is nevertheless appealed to, either by the assignee or by creditors, to assist in the speedy administration of the estate, which often is both necessary and important in connection with summary proceedings by landlords, sales of perishable or seasonal stocks, and the like.

By virtue of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544), and the rules and practice of this court, a complete machinery has been erected. There are several standing referees, whose familiarity with the subject-matter enables them to pass promptly upon questions referred to them as special masters; the office of the clerk is peculiarly equipped to deal with all matters coming before it in connection with the Bankruptcy Act; various charges and fees, when not regulated by statute, are regulated by court rules; certain limitations are placed upon attorney's fees, either by rule or by practice; a definite scale of charges is provided in respect of the official auctioneer; a special day is set for motions in bankruptcy, and one member of the court is assigned to matters coming up in bankruptcy, and is available at any time for that purpose.

With a limited number of judges, all of whom are familiar with the subject-matter, and especially with the administrative side of the Bankruptcy Act, it is possible to obtain quick action when necessary, and to have prompt hearings, on a notice so short as an hour or less, if deemed desirable. Sales cannot be made without appraisal, and the amount realized must be at least 75 per cent. of the appraised value. Attorneys may only act for receivers upon satisfying the court that they have no interest inconsistent with such service. Certain other rules, such as advertisement before sale in two standing designated papers, are intended to safeguard a proper administration.

Under the state law (Consol. Laws N. Y., c. 12) there is no express provision requiring appraisals, the fees of assignees under the statute are not to exceed 5 per cent. of the whole amount which will come into the hands of the assignee, with a minimum fee of $200 and up to 10 per cent. allowed, in the court's discretion, where the business is continued, as contrasted with the lesser fees provided for by the Bankruptcy Act. The compensation of state court referees rests in the discretion of the court, and there are no standing referees. I am told, also, that surety bonds charge heavier premiums on assignee's bonds, due probably to the fact that, where an administrator is not selected by the court, the moral hazard is greater. The procedure on sales in the state courts takes much longer and is more complicated than that in the federal courts, and the result is that applications are frequently made to the federal courts for leave to sell on the ground that longer delay will be prejudicial to the interests of the estate.

There are many practical points which must be considered in connection with the administration of bankrupt estates. The problem is naturally not so great in smaller communities. Here, however, the cost of heavy rentals, insurance, when it can be obtained, proper protection, either in the way of burglary insurance or custodians, all combine to render an expeditious administration vital to the welfare of creditors.

Much more could be said, but enough has been pointed out to show that, where the estate is ultimately to be administered in bankruptcy (and such is the case in nearly every instance), it is desirable that the administration should be in the bankruptcy court from the outset, and that the general assignment practice, which in some instances, at least,

is merely a device, should be discouraged in so far as this court has jurisdiction.

I do not wish for a moment that any one should construe what has been here said as doubting the ability and desire of the state courts to administer insolvent estates to the best possible advantage; but the state courts labor under the disadvantage of a statute which is not nearly as effective as the Bankruptcy Act, and probably labor also under certain practical disadvantages.

Any one familiar with the long and varied motion calendars at Special Term, and the assignment of judges to different parts of the court, must realize that the state court judges have not the opportunity for that continuous attention which is possible in a court composed of only four judges, who, among other things, by reason of their small number, are able to consult frequently and to adopt a practically uniform practice, not only in respect of larger questions, but also in regard to smaller detail.

In order not to disturb existing conditions, this decision will be regarded as not retroactive, in affecting cases where general assignments were made prior to the date of that in the case at bar. I may also add that there may, of course, be cases where the selection of an assignee at a meeting of reliable creditors may be had under circumstances practically equivalent to the election of a trustee; but, reserving the discretion which may be necessary for exercise in any given case, I announce the general policy of removing assignees and appointing receivers in their stead, quite irrespective of the good faith and standing of the assignee. This I think is the only means whereby the Bankruptcy Act can be carried out in accordance with its intent and spirit. In order to make perfectly plain that the course pursued in this case is in no manner a reflection on the assignee, I have appointed his partner as the receiver; but this, of course, will not be a precedent.

The motion is granted.